Paul L. TERBAN, Petitioner,

v.

DEPARTMENT OF ENERGY, Respondent.

No. 99–3318.

United States Court of Appeals, Federal Circuit.

June 8, 2000.

Rehearing Denied July 24, 2000.

Renn C. Fowler, of Belfast, Maine, argued for petitioner.

Katherine A. Barski, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director.

Before LOURIE, CLEVENGER, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

Paul L. Terban seeks review of the decision of the Merit Systems Protection Board ("Board"), *Terban v. Department of Energy*, 83 M.S.P.R. 98 (M.S.P.B.1999), sustaining the Initial Decision of the Administrative Judge, dismissing Terban's appeal from an alleged involuntary retire-

ment. For the following reasons, we affirm the Board's decision.

## I

Terban was a GM–15 Executive Officer with the Department of Energy's Office of Small and Disadvantaged Business Utilization ("OSDBU"). On June 25, 1997, Terban applied for a voluntary separation incentive ("buyout") plan, which was then being offered to eligible employees of the Agency. Shortly thereafter, Terban took a four-month period of approved leave, which included leave granted under the Family and Medical Leave Act of 1993 ("FMLA"). While on leave, Terban was informed that the Agency had approved his buyout application and his desired separation date of October 3, 1997.

In September of 1997, while still on leave, Terban contacted the Agency to inquire whether he had the option of withdrawing his retirement application should he wish to do so. The Agency informed him that he could withdraw his buyout application any time prior to the effective date of his retirement. Nevertheless, Terban did not withdraw his application. He retired from the Agency on October 3, 1997, and received an incentive payment from the Agency of $25,000.

On May 29, 1998, Terban filed an appeal to the Board, alleging that his retirement had been involuntary. Specifically, Terban alleged that the Agency had made his working conditions so intolerable, through a pattern of continuing harassment and discrimination, that he had been constructively forced to retire. In addition, Terban alleged that his supervisors had misled him regarding his retirement application and threatened to penalize him if he withdrew the application.

In support of his involuntary retirement claim, Terban submitted evidence to the Board of numerous instances of alleged harassment and discrimination from 1993 to 1997. The Administrative Judge ("AJ") considered this evidence but focused primarily on three events that occurred during the 14–month period immediately preceding Terban's retirement. They were: (1) a "thank you note" assignment given to Terban in August–September of 1996; (2) a personal confrontation between Terban and his supervisor on December 5, 1996; and (3) a continuing "audit report" assignment given to Terban in 1996–1997. Based on these events, the Board found that Terban had not been subjected to harassment or discriminatory actions severe enough to constitute a hostile or abusive work environment.

Terban also submitted evidence to the Board of an alleged threat made by his supervisor, Percy McCraney, who, according to Terban, instructed the time and attendance clerk at OSDBU to convert, retroactively, Terban's 4–month approved leave period to leave without pay ("LWOP") should Terban withdraw his retirement application and return to work. Terban testified that, although he learned of this alleged threat through coworkers rather than from McCraney himself, Terban nevertheless believed it to be true. Terban further testified that he could not afford to pay back the approximately $20,000 that an LWOP order would have required, and that this directly affected his decision to retire. The Board found that the Agency had not affirmatively misled Terban because Terban had relied only on uncorroborated hearsay from his coworkers. Further, the Board noted that, even assuming Terban's account to be true, "it is well-established that the mere fact that an employee is faced with an inherently unpleasant situation or that his choices are limited to unpleasant alternatives does not make his decision involuntary."

Because Terban failed to demonstrate to the Board any duress, coercion, or misinformation on the part of the Agency, the Board held that he had failed to establish the Board's jurisdiction over his appeal. Terban now petitions this court to review the Board's decision. We are vested with

jurisdiction by 28 U.S.C. § 1295(a)(9) (1994).

## II

The scope of our review of a decision of the Board is limited. We must affirm the decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140 (Fed.Cir.1986).

■ Resignations are presumed voluntary, and the burden of showing that the resignation was involuntary is on the petitioner. *See Cruz v. Department of Navy*, 934 F.2d 1240, 1244 (Fed.Cir.1991). In order to overcome the presumption that a resignation or retirement was voluntary, an employee must show: (1) that the resignation or retirement was the product of misinformation or deception by the agency, *see Covington v. Department of Health & Human Servs.*, 750 F.2d 937, 942 (Fed.Cir. 1984); or (2) that the resignation or retirement was the product of coercion by the agency, *see Dumas v. Merit Sys. Protection Bd.*, 789 F.2d 892, 894 (Fed.Cir.1986); *see also Staats v. United States Postal Serv.*, 99 F.3d 1120, 1124 (Fed.Cir.1996).

## A

■ Terban first argues that the Board erred by limiting its review only to those events that took place in the 14 months preceding his retirement, thus ignoring a "four year pattern of ongoing harassment." In Terban's view, a full assessment of the record requires a conclusion that he was coerced into retirement by a long pattern of abuses against him. We disagree.

At Terban's jurisdictional hearing, the AJ remarked: "I don't need to hear a large amount of evidence on [events that occurred in 1993–1995] since these specific acts, although I accept that they may have

happened perhaps, . . . are too removed in time from the retirement." Transcript of Jurisdictional Hearing at 31–32, *Terban*, No. DC0752980562–I–1 (Sept. 9, 1998). Thus, far from ignoring Terban's allegations of past discrimination and harassment, the AJ apparently accepted them as true. While the Board gave relatively little weight to the events that occurred from 1993–1995, this type of evidentiary balancing is well within the Board's discretion.

■ The Board's decision to give less evidentiary weight to incidents of harassment that occurred several years before Terban's retirement is not inconsistent with our case law in this area. In *Staats*, we stated that:

> In order to establish involuntariness on the basis of coercion, an employee must show that the agency effectively imposed the terms of the employee's resignation or retirement, that the employee had no realistic alternative but to resign or retire, and that the employee's resignation or retirement was the result of improper acts by the agency.

99 F.3d at 1124. In determining whether an alleged act of coercion caused an employee's involuntary retirement, a court need not limit itself to any particular time frame. However, since one of the prongs of *Staats* requires a showing that the employee "had no realistic alternative but to retire," *id.*, the most probative evidence of involuntariness will usually be evidence in which there is a relatively short period of time between the employer's alleged coercive act and the employee's retirement. In contrast, a long period of time between the alleged coercive act and the employee's retirement diminishes the causal link between these two events and, thus, attenuates the employee's claim of involuntariness. In this case, because Terban tolerated a long period of what he considered to be harassment before finally retiring, the Board did not err by giving little weight to the earlier instances of alleged harassment since Terban's own actions—

*i.e.*, continuing to withstand the unwelcome treatment—indicate that he had an alternative to retirement.

Terban asserts, however, that the Board misread its own case law by affording relatively little weight to the alleged incidents of harassment that occurred several years before his retirement. The AJ relied on *Bates v. Department of Justice*, 70 M.S.P.R. 659, 666 (1996) for the proposition that:

> incidents of harassment or discrimination cited in support of a claim of involuntary retirement must be reasonably close in time to the date of the retirement to allow an inference that those incidents formed conditions "recently prior to" the retirement that were so difficult that a reasonable person in the appellant's position would have felt compelled to resign.

*Terban*, slip op. at 1024. In *Bates*, a border patrol agent challenged her retirement as involuntary, citing a continuous pattern of harassment, including intentional interference with her radio transmissions. The harassment in *Bates* culminated in a situation in which the appellant, alone and on foot, was forced to apprehend three illegal aliens because her radio call for assistance was blocked out by the harassing interference of her coworkers.

Terban argues that the Board misread *Bates* as requiring a "close-in-time" relationship between harassment and retirement because, in *Bates*, the Board actually considered the appellant's evidence of a five-year period of sexual harassment and concluded therefrom that she had been effectively coerced into resigning. Indeed, a thorough reading of *Bates* shows that, although the Board found some specific instances of harassment too remote to be considered material to the involuntary retirement claim, it nevertheless found the entire pattern of sexual harassment to be persuasive. *See Bates*, 70 M.S.P.R. at 671–2 ("[W]e find that the appellant was effectively coerced into resigning by the continuous and unredressed pattern of harassment, which had escalated to a level potentially endangering her safety when she decided that she 'couldn't take it any more.' "). We disagree, however, that the Board's reliance on *Bates* was improper.

In *Bates*, the Board found that one particular incident—in which the appellant's life was endangered as a result of her coworker's harassment—served as the "last straw" that precipitated her retirement. The time period between this final incident and the appellant's retirement was approximately three weeks. Thus, although the Board considered evidence of a five-year period of harassment, that evidence served only to put the "precipitating event" into the proper context.

■ In the present case, unlike in *Bates*, Terban was unable to establish any precipitating event that occurred relatively close in time to his retirement which would have given a reasonable employee no choice but to retire. None of the three events identified by the Board in its coercion analysis—two menial work assignments and a verbal confrontation between Terban and McCraney—rises to the level of coercion necessary to overcome the presumption of voluntariness, even when viewed in the context of a continuing pattern of harassment. As we noted in *Staats:*

> [T]he doctrine of coercive involuntariness is a narrow one. It does not apply to a case in which an employee decides to resign or retire because he does not want to accept [actions] that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant for the employee that he feels that he has no realistic option but to leave.

99 F.3d at 1124.

The Board concluded, having considered all of Terban's allegations and having determined to place significant emphasis on the events closest to Terban's resignation, that the record "does not show that [Terban] was subjected to harassment or dis-

criminatory actions that by any stretch of the imagination could be considered 'severe or pervasive enough to create a working environment that a reasonable person would find hostile or abusive.'" *Terban,* slip op. at 1024. We agree with the Board that the pattern of abuse alleged by Terban cannot substantiate his involuntary retirement claim.

### B

■ In addition to his primary claim of coercion, based on the long history of alleged workplace abuses against him, Terban cites the "LWOP threat" as an independent agency act sufficient to show that his resignation was either coerced by the Agency or based upon misrepresentation by the Agency.

The Board's decision on its face dealt with the issue of possible misrepresentation by the Agency. Even if the "LWOP threat" had been made directly to Terban by McCraney (instead of reaching Terban through his coworkers), the Board concluded that the "threat" did no more than create two unpleasant alternatives for Terban. Since a choice is not involuntary simply because an employee is faced with an inherently unpleasant situation or his choice is limited to two unpleasant alternatives, *see Covington,* 750 F.2d at 942, the Board rejected Terban's reliance on the "LWOP threat" to show that his resignation was involuntary.

■ Our case law is settled that where an employee is faced with the unpleasant alternative of resigning or being subjected to an adverse action, the resulting resignation cannot be considered an involuntary retirement unless the employee shows that the agency lacked reasonable grounds for threatening to take the adverse action. *See Schultz v. United States Navy,* 810 F.2d 1133, 1135 (Fed.Cir.1987); *Autera v. United States,* 182 Ct.Cl. 495, 389 F.2d 815 (1968). In short, the burden in this case was on Terban to demonstrate that the "LWOP threat" was made without reasonable basis. Thus, at trial Terban needed to show that the Agency lacked authority or a sufficient reason to threaten Terban with retroactive conversion of his leave status to LWOP.

During the hearing before the AJ, Terban had an opportunity to show that the "LWOP threat" was without any reasonable basis. The AJ, however, concluded that the Agency "could have had a legitimate basis upon which to question (and even revoke) his concomitant entitlements," *Terban,* slip op. at 8–9. Terban has not demonstrated that the AJ's conclusion in that regard is incorrect.

At bottom, the "LWOP threat"—as Terban perceived it—would have subjected Terban to the risk of having to repay a substantial sum of money if he revoked his buyout option and returned to service, in order to account properly for his previous leave. Unless the Agency lacked a reasonable basis upon which to subject Terban to that risk, the mere fact that the Agency presented him with such an unpleasant choice does not amount to coercion. *See Staats,* 99 F.3d at 1124.

Finally, Terban faults the Board for addressing the "LWOP threat" under the misrepresentation criteria, instead of specifically addressing the question as a matter of coercion. Terban in essence seeks a remand so that the "LWOP threat" issue can be analyzed separately to determine if the alleged threat coerced Terban's retirement. We think such a remand is unnecessary. Although the face of the AJ's opinion does not reveal a coercion analysis of the alleged threat, we think the AJ implicitly rejected the possibility that the alleged threat had the coercive effect Terban attributes to it. Indeed, the AJ was unconvinced that McCraney had conveyed a threat to Terban, because McCraney's view of the LWOP issue was only conveyed indirectly. As noted above, the AJ concluded that even if McCraney had expressed his view of the LWOP matter directly to Terban, the result was simply that Terban was put to two unpleasant possibilities: to retire, or to return in the

face of the alleged LWOP threat. We think this conclusion by the AJ implicitly rejected Terban's view that his retirement was coerced by the alleged threat. In sum, Terban has failed to show that the AJ was incorrect in finding that his retirement was not involuntary.

## CONCLUSION

The Board did not err by assigning relatively more weight to events of alleged harassment that took place in the 14 months preceding Terban's retirement. The Board also did not err by failing to analyze the "LWOP threat" under the coercion theory of involuntary retirement because, at trial, Terban failed to show that the Agency lacked reasonable grounds for threatening to convert his approved leave to LWOP.

For the foregoing reasons, we affirm the decision of the Board in all respects.

## COSTS

No costs.

*AFFIRMED*