**CHARLES G. WILLIAMS CONSTRUCTION, INC.,**
**Appellant,**

**v.**

**Thomas E. WHITE, Secretary of the Army, Appellee.**

No. 01–1074.

United States Court of Appeals, Federal Circuit.

Nov. 8, 2001.

Judith Ward Mattox, of Colorado Springs, CO, argued for appellant.

Bryant S. Banes, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Donald E. Kinner, Assistant Director.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

In determining a government contractor's damages where the government has caused delay in the performance of the contract, one problem is determining what portion of the contractor's home office overhead costs during the delay period is properly chargeable to the contract involved. The so-called *Eichleay* damages involve a formula by which to calculate the government's liability for the contractor's unabsorbed office overhead.

In this case the Armed Services Board of Contract Appeals ("Board") rejected the appellant contractor's claim for *Eichleay* damages. It ruled that the contractor's "overhead for the entire period of extended contract performance was 'fully absorbed by the basic contract, contract modifications, and other projects,'" that "in computing [its] average daily overhead rate" the contractor impermissibly used both variable and fixed overhead expenses, and that the contractor's "*Eichleay* claim is not proven." Because the Board did not adequately explain the reasons for its decision, we vacate and remand.

I

The basic facts, as found by the Board, are undisputed. In September 1992, the Army, after competitive bidding, awarded

a fixed price contract to the appellant Charles G. Williams Construction, Inc. ("Williams") to improve and repair building number 628 at its medical center in Colorado. The work was to be done in two phases: phase one was the south half of the building, and phase two was the north half. The work on phase one was to be completed within 190 days of the government's notice to the contractor to proceed. There was a planned 10 day interval between the completion of phase one and the start of phase two. Williams "reasonably understood, and the Government ultimately agreed, that the contract required the Government to vacate each phase while that phase was under construction." On October 16, 1992, Williams received notice to proceed on phase one, thereby establishing completion dates of April 24, 1993 for that phase, and October 11, 1993 for phase two.

Then followed a series of problems and disputes resulting from defects in the government's specifications and deficiencies in Williams' own performance and that of its subcontractors. The government failed to vacate the southern portion of the building as required, which caused substantial delays in Williams' performance. The government issued a large number of change orders, many of which provided for additional payment.

There was discussion about extending the time for performance. At a meeting on October 20, 1993 (six months after the original April 24, 1993 completion date for phase one), the parties agreed that Williams would have until December 20, 1993 to complete phase one. On December 7, 1993, the government terminated for convenience Williams' work on phase two, except for those parts of the work that the government had directed Williams to complete as part of phase one. Williams did not complete phase one until April 26, 1994, 93 days later.

Williams filed claims with the contracting officer. After the contracting officer failed to rule on them within 60 days, Williams treated this as a deemed denial, *see* 41 U.S.C. § 605(c)(5), and appealed the adverse decision to the Board. Following an evidentiary hearing, the Board, in a detailed opinion, allowed certain of the claims (totaling $47,119). The Board, however, denied Williams' *Eichleay* claim. It stated:

> 24. CGW [Williams] claims $98,642 for 330 days of "extended overhead/unabsorbed overhead" allegedly incurred as a result of the drawing defects, differing site conditions and Government occupancy of the work area. The claimed amount is an "Eichleay" calculation. (Gov't supp. R4, Vol. B at 9; R4, tab 62 at 5–6) The DCAA [Defense Contract Audit Agency] auditor found that the overhead for the entire period of extended contract performance was "fully absorbed by the basic contract, contract modifications, and other projects." He further found that CGW used both variable and fixed overhead expenses in computing the average daily overhead rate. (Gov't supp. R4, Book 11, tab 2 at 003795–96; tr. 2/270–73) On this evidence, CGW's Eichleay claim is not proven.

## II

In *West v. All State Boiler, Inc.*, 146 F.3d 1368 (Fed.Cir.1998), we explained the rationale of *Eichleay* damages. We pointed out that in addition to a contractor's direct costs, which "arise solely because of and are attributable directly to performance of a specific contract," "a government contractor incurs indirect costs which are not attributable to one contract in particular but arise because of its gener-

al operations. Indirect costs are usually those costs that are 'incurred despite construction inactivity on a project, such as home office overhead including accounting and payroll services, general insurance, salaries of upper level management, heat, electricity, taxes, depreciation.'" *Id.* at 1372 (quoting *Interstate Gen. Gov't Contractors, Inc. v. West,* 12 F.3d 1053, 1058 (Fed.Cir.1993)). "A contractor recovers its indirect costs by allocating them on a proportionate basis among all of its contracts." *Id.* (citations omitted). We quoted the following statement from the Board's *Eichleay* decision:

> [O]verhead costs, including the main office [or home office] expenses involved in this case, cannot ordinarily be charged to a particular contract. They represent the cost of general facilities and administration necessary to the performance of all contracts. It is therefore necessary to allocate them to specific contracts on some fair basis of proration.

*Id.* at 1372 (quoting *Eichleay Corp.,* ASBCA No. 5183, 60–2 B.C.A. (CCH) ¶ 2688, 13,574, 1960 WL 538 (1960)) (second alteration in original). We further stated that "recovery under the *Eichleay* formula is an extraordinary remedy designed to compensate a contractor for unabsorbed overhead costs that accrue when contract completion requires more time than originally anticipated because of a government-caused delay." *Id.* at 1377 (citations omitted). The contractor must of course "show that a government-imposed delay occurred." *Sauer Inc. v. Danzig,* 224 F.3d 1340, 1348 (Fed.Cir.2000).

█ *Eichleay* damages involve a formula used to calculate a contractor's daily unabsorbed overhead; the amount is then multiplied by the number of days of government-caused performance delay to determine the contractor's damages. *Eichleay Corp.,* ASBCA No. 5183, 60–2

B.C.A. (CCH) ¶ 2688, 13,568 (1960). In the present case Williams calculated its *Eichleay* daily unabsorbed overhead at $468, which it multiplied by 330 (the government-caused days of delay) for a total of $98,642.

█ The "two prerequisites to application of the *Eichleay* formula to recover unabsorbed overhead [caused by government delay are]: (1) that the contractor be on standby and (2) that the contractor be unable to take on other work." *Interstate Gen. Gov't Contractors, Inc. v. West,* 12 F.3d 1053, 1056 (Fed.Cir.1993). "The proper standby test focuses on the delay or suspension of contract performance for an uncertain duration, during which a contractor is required to remain ready to perform." *Id.* at 1058. The second prong-the contractor's inability to take on outside work-requires "the government to demonstrate that it was not *impractical* for the contractor to take on *replacement* work and thus avoid the loss." *All State Boiler,* 146 F.3d at 1381 (emphasis added). If both of these requirements are satisfied, the contractor has shown that it had unabsorbed general overhead for which it is entitled to *Eichleay* damages.

█ Many, if not most, of our decisions involving *Eichleay* damages have dealt with those two requirements. In the present case, however, the Board did not mention, let alone discuss, either of these. Instead, it ruled that Williams' *Eichleay* claim failed because the auditor found that all of Williams' home office overhead was absorbed. As the Board stated:

> The DCAA auditor found that the overhead for the entire period of extended contract performance was "fully absorbed by the basic contract, contract modifications, and other projects." ... On this evidence, CGW's Eichleay claim is not proven.

The quoted language from the auditor's "finding" apparently is taken from the revised audit report of Williams' proposed revised equitable adjustment it submitted to the contracting officer. The audit report described the quoted language as "our prior opinion" expressed in the auditor's earlier report.

■ The Board's function in this case was itself to determine whether Williams had established its case for *Eichleay* damages, not to determine whether the auditor's "finding" that Williams had not done so was supported by the record. The Board was entitled to give the auditor's evidence and testimony, like that of any other evidence, whatever weight it concluded it should have. Under the Contracts Disputes Act, however, it is the function and responsibility of the Board, and not of the auditor, to decide the question of entitlement.

Although the *Eichleay* claim was the largest element of damages Williams sought, and apparently was the most significant legal issue in the case, the Board's sole discussion of the *Eichleay* claim in its 13 page single-spaced opinion was Finding 24, a 9 line passage quoted earlier. Following the Board's 31 findings of fact, the opinion concludes with a two-page discussion captioned "DECISION," which does not even mention the *Eichleay* claim. Since the determination that the overhead was fully absorbed was a key basis for the Board's rejection of the *Eichleay* claim, one would have expected that the Board would have made its own finding to that effect, rather than merely stating that the auditor had so found. One would also have expected the Board to discuss the underlying evidence relating to that issue. The Board's treatment of this issue created uncertainty about what the Board actually found and the basis for its finding.

In his testimony at the Board hearing, the auditor summarized the reasons for his conclusions. He stated: "Based on the data that we have evaluated, the contractor continued to work on this project during the time of the contract, it did not have any reduction in their flow of direct costs; therefore, this contract continued to absorb its equitable share of general and administrative expenses; they didn't have to go out and replace work because the work was being replaced by this additional effort on this contract; and since they continued to bid and get jobs after that, that there wasn't a drop-off in the follow-on work that would indicate that they couldn't bid on some job or couldn't get some job, or the other contracts did not absorb more overhead that they should have." Once again, however, the Board did not discuss that testimony, or indicate whether or why it considered it persuasive.

The Board's other stated ground for rejecting Williams' *Eichleay* claim—that the auditor "found that [Williams] used both variable and fixed overhead expenses in computing the average daily overhead rate"—is subject to most of the same infirmities as its "fully absorbed" overhead ruling.

Like the auditor's "finding" on absorption of overhead, this "finding" also was contained in the revised audit report. It was one of two reasons for the auditor's statement that "we do not agree with CGW's methodology for applying the *Eichleay* formula." The auditor stated: "The *Eichleay* formula is designed to compensate the contractor for any fixed costs that were over-absorbed by other contracts. Therefore, the *Eichleay* formula is only suppose [sic] to use fixed overhead costs in computing the average daily overhead rate."

Although *Eichleay* claims necessarily deal only with fixed overhead expenses,

the Board did not address what portions of those expenses were in each of those categories, or whether the portions of the expenses that constituted fixed costs could be separated from total overhead. If that could be done, it would seem that only the portion that constituted variable overhead should be disallowed. Indeed, at the Board hearing the auditor stated that after his initial audits he did complete "an Eichleay daily rate with the variable cost out of the pool."

In sum, on the basis of the Board's opinion in this case, we cannot determine whether it properly rejected Williams' *Eichleay* claim or determine how that question should be answered. *See McKeague v. United States,* 788 F.2d 755, 758 (Fed. Cir.1986) ("'We must know what a decision means before the duty becomes ours to say whether it is right or wrong.'") (quoting *United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 294 U.S. 499, 511, 55 S.Ct. 462, 79 L.Ed. 1023 (1935)). Accordingly, we shall vacate the Board's denial of the *Eichleay* claim and remand to the Board to reconsider that issue. In so ruling, we of course intimate no views on the merits of the question.

## CONCLUSION

The portion of the Board's decision that rejected Williams' *Eichleay* claim as not proven is vacated, and the case is remanded to the Board for further proceedings on that issue in light of and consistent with this opinion.

*VACATED AND REMANDED.*