**CHARLES G. WILLIAMS CONSTRUCTION, INC., Appellant,**

v.

**Thomas E. WHITE, Secretary of the Army, Appellee.**

No. 02–1462.

United States Court of Appeals, Federal Circuit.

DECIDED: May 5, 2003.

---

Judith Ward Mattox, of Colorado Springs, CO, argued for appellant.

Carolyn J. Craig, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Donald E. Kinner, Assistant Director. Of counsel on the brief was Major John B. Alumbaugh, Department of the Army, United States Army Legal Services Agency, of Arlington, VA.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The question in this case, here for a second time, is whether the Armed Services Board of Contract Appeals ("Board") correctly held that a government contractor had failed to prove an essential element of its claim for so-called *Eichleay* damages covering its unabsorbed home office overhead costs during a period of government-caused delay in contract performance. In the prior appeal, we vacated the Board's earlier decision denying *Eichleay* damages because the Board had not adequately addressed the issue, and remanded for further Board proceedings. On the remand, the Board again denied the *Eichleay* claim. We affirm.

## I

The facts are fully set forth in our prior opinion, *Williams Construction, Inc. v. White*, 271 F.3d 1055, 1055–57 (Fed.Cir. 2001). They will be here repeated only to the extent necessary for our decision.

The appellant (Williams) was awarded a fixed-price contract to improve and repair

a government building. The work was to be done in two phases, covering the south and north portions of the building, and there was a specified completion date. "Williams 'reasonably understood, and the Government ultimately agreed, that the contract required the Government to vacate each phase while that phase was under construction.'" *Id.* at 1057.

There were substantial delays in performance of the contract, for which the Board held that both the government and Williams were responsible. There were "defects in the government's specifications and deficiencies in Williams' own performance and that of its subcontractors. The government failed to vacate the southern portion of the building as required, which caused substantial delays in Williams' performance. The government issued a large number of change orders, many of which provided for additional payment." *Id.*

The government ultimately terminated for convenience Williams' work on phase two and Williams completed phase one ninety-three days after its extended completion date. *Id.* In the ensuing dispute on Williams' various claims, the Board allowed some of them, but denied Williams' *Eichleay* claim. The Board devoted only a single finding (No. 24) to that claim, which stated in pertinent part:

> The DCAA [Defense Contract Audit Agency] auditor found that the overhead for the entire period of extended contract performance was "fully absorbed by the basic contract, contract modifications, and other projects." He further found that CGW used both variable and fixed overhead expenses in computing the average daily overhead rate. On this evidence, CGW's Eichleay claim is not proven.

*Id.* (quoting Gov't supp. R4, Book 11, tab 2 at 003795–96; tr. 2/270–73). The Board did not even mention the *Eichleay* claim in its two-page discussion captioned "DECISION," which followed its 31 findings. *Id.*

We vacated the Board's decision rejecting Williams' *Eichleay* claim as not proven, and remanded to the Board for further proceedings in light of and consistent with our opinion. *Id.* at 1060. We stated:

> The Board's function in this case was itself to determine whether Williams had established its case for *Eichleay* damages, not to determine whether the auditor's "finding" that Williams had not done so was supported by the record. The Board was entitled to give the auditor's evidence and testimony, like that of any other evidence, whatever weight it concluded it should have. Under the Contracts Disputes Act, however, it is the function and responsibility of the Board, and not of the auditor, to decide the question of entitlement.

*Id.* at 1059.

After discussing the Board's findings and its opinion in some detail, we concluded that, "on the basis of the Board's opinion in this case, we cannot determine whether it properly rejected Williams' *Eichleay* claim or determine how that question should be answered." *Id.* at 1060.

On the remand, the Board again denied Williams' *Eichleay* claim. It made an additional 11 detailed findings on the claim, followed by a brief discussion of it in the "DECISION" section of its opinion.

The Board found, "based on the auditor's report and testimony, the daily reports, and other data referred to above, that appellant has not proved that performance of the work was suspended or significantly interrupted during the period" involved. (Finding 11). It found that the auditor had "credibly testified" that when he had asked Williams' witness Scherling, a consultant, whether Williams could show that "they had a reduction in the flow of

the direct costs" during the period in question, Scherling had replied "[w]e don't have anything." (Finding 7; *see also* Finding 8). It quoted and accepted the auditor's testimony that:

[b]ased on the data that we have evaluated, the contractor continued to work on this project during the time of the contract, it did not have any reduction in their flow of direct costs; therefore, this contract continued to absorb its equitable share of general and administrative expenses; they didn't have to go out and replace work because the work was being replaced by this additional effort on this contract . . .

The Board further found:

[t]he audit report and auditor's testimony are corroborated by CGW's daily reports which show that the site was manned without significant interruption by CGW and its subcontractors (who performed 89 percent of the work) throughout the contract performance period (supp. R4, Books 2–5, supp. R4, Vol. A. tab 1 at 5–8). The audit report and auditor's testimony are also corroborated by the data which CGW submitted in support of its termination settlement claim.

In the "DECISION" section of its opinion, the Board, after noting that "[t]he first prerequisite for an *Eichleay* recovery is that the contractor be on 'standby' for an uncertain duration"—a concept we discuss in part II below—concluded:

[w]ith the additional findings above, we reaffirm our original Finding 24 that CGW has failed to carry that burden. The auditor's report and testimony were credible, corroborated by the daily reports, the scope of the contract modifications, and the data in CGW's termination settlement claim, and were unrebutted by any credible evidence by CGW.

## II

In our prior opinion, we described "the rationale of *Eichleay* damages." 271 F.3d at 1057. Quoting from earlier decisions, we explained:

in addition to a contractor's direct costs, which arise solely because of and are attributable directly to performance of a specific contract, a government contractor incurs indirect costs which are not attributable to one contract in particular but arise because of its general operations. Indirect costs are usually those costs that are incurred despite construction inactivity on a project, such as home office overhead including accounting and payroll services, general insurance, salaries of upper level management, heat, electricity, taxes, depreciation. A contractor recovers its indirect costs by allocating them on a proportionate basis among all of its contracts. . . . [R]ecovery under the *Eichleay* formula is an extraordinary remedy designed to compensate a contractor for unabsorbed overhead costs that accrue when contract completion requires more time than originally anticipated because of a government-caused delay. . . .

*Eichleay* damages involve a formula used to calculate a contractor's daily unabsorbed overhead; the amount is then multiplied by the number of days of government-caused performance delay to determine the contractor's damages.

*Id.* at 1057–58 (citations and internal quotation marks omitted).

■ The present appeal involves only one of the " 'two prerequisites to application of the *Eichleay* formula to recover unabsorbed overhead [caused by government delay] . . . (1) that the contractor be on standby.' " *Id.* at 1058 (citation omitted). "The proper standby test focuses on

the delay or suspension of contract performance for an uncertain duration, during which a contractor is required to remain ready to perform.... If both of these requirements are satisfied, the contractor has shown that it had unabsorbed general overhead for which it is entitled to *Eichleay* damages." *Id.*

■ The Board here found that Williams had not proved it was on standby because it has not shown that "performance of the work was suspended or significantly interrupted during the period" in dispute. Unlike its earlier opinion, in which it merely had reviewed the auditor's decision that Williams had not established its entitlement to *Eichleay* damages, on the remand the Board itself determined that issue. The Board thus complied with the directive in our prior opinion that it conduct "further proceedings on that issue in light of and consistent with this opinion." *Id.* at 1060.

To be sure, the Board gave significant weight to the "auditor's report and testimony," but in our prior opinion we recognized that the Board could give such evidence "whatever weight it concluded it should have." *Id.* at 1059. The Board also gave weight to the other evidence in the record to which it referred.

As Williams admitted at oral argument, there was no evidence that on any particular day it was unable to do any work at all on the contract, but still was required to remain able to resume work on short notice. Furthermore, there was no evidence that the government directed Williams to remain so on call.

Williams challenges the Board's finding that it did not establish that it was on standby because, Williams contends, that finding "disregards substantial evidence in the record." The Board's failure to discuss the evidence upon which Williams relies does not mean that it did not consider it. *Gonzales v. West*, 218 F.3d 1378, 1381 (Fed.Cir.2000). Williams' evidentiary argument basically challenges and disagrees with the weight the Board gave to the evidence in the case. We do not reweigh the evidence before the Board. We cannot say that the Board's finding that Williams had not shown that it was on standby is supported by less than substantial evidence.

Williams places considerable weight on the statement in a two-page letter from its CEO to the contracting officer during performance that "Williams and his sub-contractors are on standby." There is no indication of the basis for that statement or that it reflected the correct meaning of standby. Indeed, it may have been based upon a misunderstanding of that concept, discussed below.

In its brief Williams appears to argue that if the government significantly interfered with efficient performance of the contract, that would establish entitlement to *Eichleay* damages even though the contractor continued to perform the contract. At oral argument, Williams answered affirmatively the question whether a contractor is entitled to *Eichleay* damages if, as a result of government delay, the contract cannot be performed as efficiently or effectively as it was understood it should have been performed.

■ Such a showing would not be sufficient to establish entitlement to *Eichleay* damages. As indicated, such damages are utilized to compensate a contractor for its indirect costs that cannot be allocated to a particular contract for the period during which the government has made contractual performance impossible, while requiring the contractor to remain available to resume performance on short notice. As long as the contractor is able to continue performing the contract, although not in

the same way or as efficiently or effectively as it had anticipated it could do so, it can allocate a portion of its indirect costs to that contract. There is accordingly no occasion in that situation to resort to "recovery under the *Eichleay* formula," which is "an extraordinary remedy." *Williams Constr.*, 271 F.3d at 1058 (quoting *West v. All State Boiler, Inc.*, 146 F.3d 1368, 1377 (Fed.Cir.1998)); *cf. Melka Marine, Inc. v. United States*, 187 F.3d 1370, 1376 (Fed. Cir.1999) ("If work on the contract continues uninterrupted, albeit in a different order than originally planned, the contractor is not on standby.").

■ Williams challenges the Board's finding that the auditor's testimony and evidence were credible. Board credibility determinations, however, are "virtually unassailable." *Planning Research Corp. v. United States*, 971 F.2d 736, 741 (Fed. Cir.1992). Administrative Judge Freeman, who presided at the hearing, and wrote the Board's opinion on remand, saw and heard the auditor's testimony, and therefore was particularly well qualified to evaluate his credibility. The various grounds upon which Williams challenges the auditor's credibility, including the alleged inconsistency of his conclusions with four admissions by the contracting officer, are unconvincing and do not warrant rejecting the Board's credibility finding.

### CONCLUSION

The decision of the Board is

*AFFIRMED.*