NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DWIGHT WIMPER,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2015-3061

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-14-0617-I-1.

---

Decided: December 2, 2015

---

KELLY LYNN BURCHELL, BGM Law PLLC, Washington, DC, for petitioner.

STEPHEN FUNG, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK.

---

Before O'MALLEY, TARANTO, *Circuit Judges,* and STARK,
*District Judge.*[*]

O'MALLEY, *Circuit Judge.*

Dwight Wimper ("Wimper") seeks review of the Merit
Systems Protection Board ("the Board") decision dismiss-
ing his appeal for lack of jurisdiction without a hearing.
*Wimper v. Dep't of the Army*, No. DC-0752-14-0617-I-1,
2014 MSPB LEXIS 7383 (M.S.P.B. Oct. 20, 2014). Specif-
ically, the Board found that Wimper failed to nonfrivo-
lously allege that his resignation was involuntary. For
the reasons explained below, we *affirm*.

## BACKGROUND

Wimper was employed as a Human Resource Special-
ist with the Department of the Army ("the agency") from
February 22, 2005, until his resignation in April 2014. As
a condition of his employment, Wimper was required to
maintain a top-secret security clearance and pass random
drug tests.

On August 14, 2013, the agency randomly selected
Wimper for a drug test. Pursuant to its regulations, the
agency conducted urinalysis to test for drug use, using a
split-specimen collection procedure, meaning one portion
of the specimen was tested while the other was reserved
for follow-up testing, if needed. On August 29, 2013, the
medical review office reported that Wimper's urine sam-
ple tested positive for cocaine. Given the initial positive
result, the agency sent the second portion of the split-
sample to an approved third-party laboratory for verifica-
tion of the initial result. That test confirmed the positive
result for cocaine.

---

[*]    The Honorable Leonard P. Stark, Chief District
Judge, United States District Court for the District of
Delaware, sitting by designation.

On October 23, 2013, Wimper reported for a second drug test, which came back negative for cocaine. In December 2013, Wimper took a separate, independent drug test which tested his body hair instead of urine. That test showed that Wimper tested negative for cocaine for a time frame of "approximately 12 month[s]." Joint Appendix ("JA") 10.

By memorandum dated December 11, 2013, the agency issued a Notice of Proposed Removal for "unauthorized use of a controlled substance and failure to maintain a condition of employment." JA 5. Wimper submitted a written response, through counsel, denying drug use and requesting "a full complete copy of all drug test materials from all laboratories and names and designations of all personnel who had [his] sample in their custody." JA 12. Wimper also requested that he have access to the initial urine sample to conduct a DNA analysis. Wimper submitted a separate document requesting that the agency conduct a DNA test of his urine specimen and asking the agency to provide chain of custody documentation.

On January 14, 2014, the deciding official—Colonel Twanda Young—completed a "Douglas Factor Checklist," which included findings of fact and an assessment of the appropriate penalty. Therein, Colonel Young found that, based on the evidence of record and Wimper's response, Wimper was guilty of drug use. She explained that Wimper's "Body Hair Analysis" drug test was not credible, because it "is unknown if the 12 month span report included the period found positive." JA 16. Based on her findings, and her analysis of the *Douglas* factors, Colonel Young decided to sustain the proposed removal.

Colonel Young subsequently responded to Wimper's request for additional information and explained how Wimper could have his August 14, 2013 urine sample retested at his expense at an approved laboratory. She explained that Wimper's October 23, 2013 test was not a

"retest"—but rather a separate test—particularly given that cocaine generally "only persist[s] in urine at detectable concentrations for a period of 2-4 days." JA 25-26. Colonel Young further indicated that, because urine was the "only approved specimen matrix to be collected in the drug testing program[,]" she was authorized to render a decision based solely on the results of Wimper's urinalysis. JA 25. After additional correspondence between Wimper and Colonel Young, the agency issued its Notice of Decision to Remove Wimper from the federal service on April 8, 2014. The Notice informed Wimper that he had the right to appeal his removal to the Board and explained how to file that appeal.

In a response to the agency's Notice of Decision to Remove dated April 15, 2014, Wimper alleged that, while at the agency on April 8, 2014 for the sole purpose of entering sick time into the attendance system, Colonel Young tried to make him sign a document without consulting his lawyer and embarrassed and humiliated him when he declined to do so.[1] Wimper asserted that this "despicable" behavior by Colonel Young was in retaliation for an earlier-filed equal employment opportunity ("EEO") complaint and was, thus, retaliatory. JA 63.

By letter dated April 14, 2014, Wimper resigned from his position, effective April 17, 2014. In that letter, Wimper did not provide any information regarding his reason for resigning. Nor did he assert that his resignation was involuntary. Accordingly, the agency processed his resignation with an adjusted effective date of April 17, 2014.

Wimper timely appealed to the Board, arguing that he was forced to resign from his position to "keep from being

---

[1]   It is unclear from the record when this response was delivered to the agency.

fired due to allegations that are not true." *Wimper*, 2014 MSPB LEXIS 7383, at *3. Wimper submitted a number of documents with his appeal, including correspondence regarding the removal decision and a copy of an EEO complaint. *Id.*

On May 14, 2014, the agency moved to dismiss Wimper's appeal for lack of jurisdiction, arguing that Wimper "does not and cannot refute that he voluntarily resigned effective April 17, 2014." JA 75. The administrative judge ("AJ") ordered Wimper to respond to the agency's motion and directed him to "file a response to include nonfrivolous allegations of fact to support a finding that his resignation was somehow coerced or involuntary." *Wimper*, 2014 MSPB LEXIS 7383, at *4. Wimper timely responded, citing cases explaining involuntary resignations, constructive removals, and coercion. Wimper asserted that, based on this authority, it was clear that his resignation was involuntary because he had already been informed he was being terminated. Wimper then concluded that he "made nonfrivolous allegations that, if proven, entitle him to a jurisdictional hearing." JA 90. Notably, Wimper did not allege that his unpleasant encounter with Colonel Young on April 8, 2014 caused his resignation.

On October 20, 2014, the AJ issued an initial decision dismissing Wimper's appeal for lack of jurisdiction. Given the "unrefuted facts," the AJ found Wimper's resignation voluntary. *Wimper*, 2014 MSPB LEXIS 7383, at *8. Because Wimper "failed to nonfrivolously allege facts to support a finding that his resignation was coerced and/or otherwise involuntary," the AJ dismissed his appeal for lack of jurisdiction without a hearing. *Id.* at *10.

The AJ's initial decision became the final decision of the Board on November 24, 2014, when Wimper did not file a petition for review by the full Board. Wimper timely

appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

### DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Fields v. Dep't of Justice*, 452 F.3d 1297, 1301 (Fed. Cir. 2006). Whether the Board has jurisdiction to adjudicate an appeal is a question of law, which we review de novo. *Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008). We review findings of fact underlying the Board's jurisdictional decision for substantial evidence. *Id.*

The Board's jurisdiction is not plenary, but is limited to those matters over which it has been given jurisdiction by law, rule, or regulation. *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). Resignations are presumed voluntary, and an employee who voluntarily resigns has no right to appeal to the Board. *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1329 (Fed. Cir. 2006) (en banc). The Board has jurisdiction where the employee proves, by a preponderance of the evidence, that his resignation was involuntary and thus "tantamount to forced removal." *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001). We have recognized that "an involuntary resignation constitutes a constructive removal that is appealable to the [Board]." *Id.*

We have also recognized that, in constructive removal cases, the Board's "jurisdiction and the merits of an alleged involuntary separation are 'inextricably intertwined.'" *Id.* (quoting *Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987)). "If it is established that a resignation . . . is involuntary, the [Board] not only has

jurisdiction, 'but also the employee wins on the merits and is entitled to reinstatement.'" *Id.* (quoting *Schultz*, 810 F.2d at 1136)).

Employees typically seek to show that their resignations were involuntary on grounds that the agency: "proposed or threatened an adverse action against the employee," "misinformed or deceived the employee," or coerced the employee to retire by creating intolerable working conditions. *Id.* (internal citations omitted). To establish involuntariness on the basis of coercion, an employee must show that: "(1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency." *Garcia*, 437 F.3d at 1329 (quoting *Shoaf*, 260 F.3d at 1341); *see also Fruhauf Sw. Garment Co. v. United States*, 111 F. Supp. 945, 951 (Ct. Cl. 1953). The test for involuntariness is "an objective one" that "considers the totality of the circumstances." *Garcia*, 437 F.3d at 1329 (internal citations omitted). In applying this test, we have stated that coercive involuntariness:

> does not apply to a case in which an employee decides to resign or retire because he does not want to accept a new assignment, a transfer, or other measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant for the employee that he feels that he has no realistic option but to leave. As this court has explained, the fact that an employee is faced with an unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary.

*Id.* (quoting *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1124 (Fed. Cir. 1996)). The Board will find an employee's

resignation involuntary where the employee shows that he resigned to avoid an adverse action that the agency was not entitled to take. *Terban v. Dep't of Energy*, 216 F.3d 1021, 1026 (Fed. Cir. 2000). But where "an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Schultz*, 810 F.2d at 1136.[2]

When an employee makes a nonfrivolous allegation of Board jurisdiction, he is entitled to a hearing where he must prove jurisdiction by a preponderance of the evidence. *Garcia*, 437 F.3d at 1344; *see also Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008) ("If the employee successfully makes nonfrivolous allegations of jurisdiction, the Board then conducts a hearing on the merits."). On appeal, Wimper argues that he made a sufficient showing that his resignation was involuntary and that this court should remand back to the AJ for an evidentiary hearing. Specifically, Wimper contends that the AJ failed to consider certain documents which showed that the agency: (1) engaged in improper conduct when it removed him without a reasonable basis; and (2) "inappropriately used misinformation, deceit, and force throughout the administrative process." Appellant's Br. 10-11. According to Wimper, the agency left him with no choice but to resign.

In response, the government argues that we should affirm the Board's decision to dismiss Wimper's appeal for lack of jurisdiction because he failed to make a nonfrivo-

---

[2]   While Wimper claims that this court has never addressed constructive discharge due to inevitable termination, we have stated that a resignation to avoid removal for cause is not involuntary. *See Schultz*, 810 F.2d at 1136. The non-binding cases Wimper cites to the contrary do not alter that conclusion.

lous allegation that his resignation was involuntary. The government further argues that there is no factual or legal support to Wimper's argument that his resignation was coerced. Finally, the government maintains that Wimper's due process rights were not violated and his hostile work environment claims lack merit. For the reasons explained below, the government's arguments are well-taken.

## A. The Reasonableness of the Agency's Actions

As the AJ indicated, "unless the appellant can demonstrate that the agency lacked 'reasonable grounds for threatening to take the adverse action,' the 'resulting resignation cannot be considered . . . involuntary.'" *Wimper*, 2014 MSPB LEXIS 7383, at *6 (quoting *Terban*, 216 F.3d at 1026). The AJ explained that Wimper "does not allege that his resignation was the product of intolerable working conditions, misinformation, misrepresentation, or deception, nor does he claim that the agency knew it would not prevail if the action was challenged or that it lacked reasonable grounds to support its decision to terminate his employment." *Id*. at *9. Instead, Wimper's allegations were simply that his resignation was involuntary because he was forced to resign "to keep from being fired." *Id*. Because Wimper failed to nonfrivolously allege facts to support a finding that his resignation was coerced or otherwise involuntary, the AJ dismissed his appeal for lack of jurisdiction.

Wimper argues that his resignation was based on the agency's improper conduct in: (1) predetermining his guilt without addressing inconsistencies in the drug tests; (2) failing to consider exculpatory evidence; and (3) misleading him throughout the process. In particular, Wimper claims that he "raised the issues of the initial cutoff concentration level for cocaine in both the initial test and the split level test and the lack of evidence regarding the complete chain of custody for the August 14,

2013 drug test." Appellant's Br. 23-24. Wimper further alleges that the agency erred in refusing to consider his "Body Hair Analysis"—which indicated that he tested negative for cocaine. Finally, Wimper alleges that, when he sought DNA testing of his August 14, 2013 urine sample, the agency responded that it would render its decision without reviewing those results.

Wimper's allegations are unsupported in the record, and, in any event, do not establish that he resigned involuntarily. As to the initial cutoff concentration level for cocaine, the government explains that the agency provided Wimper with information as to where he could obtain more specific, scientific detail about the nature of the testing. And, "the agency's failure to provide the petitioner with the cutoff concentration levels for his drug tests in no way shows that the agency could not reasonably believe in the accuracy of the drug test." Respondent's Br. 20. Although Wimper alleges that the agency refused to consider his body hair drug test, the record reveals that Colonel Young did review that test, but "did not find the results creditable." JA 16. Accordingly, Colonel Young relied solely on the agency's own urine test results, which was permitted under the agency's regulations. *See* Army Reg. 600-85 at ¶ 4-1 (2012) ("The Army's drug testing policy is dependent on an aggressive and thorough urinalysis program . . . .").

Applying the *Terban* standard, the AJ correctly dismissed Wimper's appeal because the record demonstrated that the agency had a reasonable basis to believe the removal would be sustained. 216 F.3d at 1026. Wimper violated the terms of his employment when he tested positive for cocaine during a random drug test administered pursuant to agency policy. *Wimper*, 2014 MSPB LEXIS 7383, at *1. The record reveals that the agency followed its procedures in obtaining the drug test results, including verification by a third-party laboratory. Accordingly, the record supports the AJ's finding that Wimper

failed to show that the agency "lacked reasonable grounds to support its decision to terminate his employment." *Id.* at *9.

Although Wimper argues that the AJ ignored certain documents in rendering his decision, the AJ recognized that Wimper "attached a number of other random documents relating to the agency's removal action." *Wimper*, 2014 MSPB LEXIS 7383, at *3. After considering these submissions, the AJ found that Wimper "completely failed to respond with any allegations of fact to support a finding that his resignation was involuntary." *Id.* at *8. In reaching this conclusion, the AJ noted that Wimper provided "a 15-page summary of the law relating to constructive removals and concluded, without any supporting allegations, that it 'should be perfectly clear that [he] made nonfrivolous allegations that, if proven, entitle him to a jurisdictional hearing[]." *Id.*

Based on the "unrefuted facts," the AJ concluded that Wimper's resignation was voluntary. *Wimper*, 2014 MSPB LEXIS 7383, at *8. That the AJ did not mention all of the specific documents in reaching this conclusion does not mean that he did not consider them. *See Charles G. Williams Constr., Inc. v. White*, 326 F.3d 1376, 1380 (Fed. Cir. 2003) ("The Board's failure to discuss the evidence upon which Williams relies does not mean that it did not consider it.") This is especially true given that an administrative judge has broad discretion to decide the contents of his opinion, including what it should contain and in what detail. *Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007); s*ee Terban*, 216 F.3d at 1024 (recognizing that giving "little weight to" certain events is "well within the Board's discretion"). And the fact that the AJ referred to the documents Wimper submitted as "random" indicates that he reviewed them, but found the documents were not relevant to demonstrating that Wimper's resignation was involuntary. That decision

was within the AJ's discretion, and we decline to disturb it on appeal.

## B.  Deception

Next, Wimper argues that the agency's deceptive actions forced him to resign. We have recognized that a "resignation or retirement is involuntary if it is obtained by agency misinformation or deception." *Covington v. Dep't of Health & Human Servs.*, 750 F.2d 937, 942 (Fed. Cir. 1984). In *Covington*, for example, the appellant was informed that his agency was being abolished, his position was therefore being abolished, and he had no right of assignment to another position. *Id.* at 939. It turned out that notice was incorrect, however, because certain employees had the right to compete for positions within the successor agency. *Id.* at 940. After receiving the notice, and relying on the incorrect information contained therein, the appellant elected to retire through a discontinued service retirement prior to the separation date dictated by the reduction in force. *Id.* at 939. On appeal, we held that the appellant's retirement was involuntary because the agency's notice was "misleading and erroneous in material ways." *Id.* at 942. We explained that, the "misleading information can be negligently or even innocently provided; if the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary." *Id.*

Here, the record is devoid of any evidence that Wimper relied on any misrepresentation to his detriment. Wimper points to the following as evidence of deception: (1) the agency found him guilty and decided to remove him in January 2014, but he was not removed until April 2014; (2) the agency led him to believe he could access his DNA sample for testing, but later denied him access; and (3) the agency required Wimper "to report to work to personally enter his sick leave, as a ruse to issue its removal decision." Appellant's Br. 25. None of these

allegations, even if true, provided incorrect information upon which Wimper relied or could have relied in deciding to resign.

First, although Colonel Young did make an initial evaluation of the proposed removal in January 2014, she did not effectuate the removal at that time because she gave Wimper an opportunity to gather information and provide a supplemental response before issuing the removal in April 2014. Second, the record shows that Wimper requested access to his urine sample for DNA testing, and in March 2014, the agency gave him specific instructions as to how he could obtain the specimen for testing. There is no record evidence that the agency denied Wimper access. As to his claim of an elaborate ruse to issue the agency's removal decision, there is no evidence that requiring Wimper to come to the office to enter his sick leave misled him into deciding to resign. Accordingly, Wimper failed to establish that the agency forced him to resign through deception or misinformation.

## C. Coercion

As noted, to establish involuntariness on the basis of coercion, an employee must show that the agency "effectively imposed" the terms of the resignation, the employee had no realistic alternative but to resign, and the employee's resignation "was the result of improper acts by the agency." *Staats*, 99 F.3d at 1124. On appeal, Wimper argues that "the Agency effectively imposed the terms of [his] resignation through its unwillingness to address exculpatory evidence, acts of deception, and heavy-handiness [sic] when serving Appellant with his Notice of Removal." Appellant's Br. 26. According to Wimper, he had few, if any, options to contest his removal and that his "only option was resignation." *Id.* Wimper also alleges that he was pushed to his breaking point by the agency's "coercive actions on April 8, 2014," which tricked him into "entering the building on false pretenses, and then

having him escorted out by police when he was medically unable to accept service of their removal." *Id.* at 27-28. Shortly thereafter, Wimper "submitted his resignation in the face of his inevitable termination." *Id.* at 28.

Each of Wimper's claims lacks foundation in the record. First, there is no evidence that the agency imposed or suggested Wimper's resignation. The mere fact that Wimper resigned to avoid his pending removal does not mean that his resignation was coerced. *See Schultz*, 810 F.2d at 1136 ("[W]here an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act."). Second, although Wimper claims he had no options to contest his removal, the agency gave him ample opportunity to do so. Wimper submitted a written response to the removal proposal as well as a supplemental response after he requested and obtained more information. And, although Wimper claims that he had no choice but to resign "to ensure a fair, impartial review of his disciplinary matter," Appellant's Br. 27, the agency informed Wimper that he had the right to appeal his removal to the Board. Accordingly, Wimper failed to show that his resignation was the product of coercion.

## D. Wimper's Remaining Arguments

Wimper also asserts that: (1) the agency violated his due process rights by denying him an opportunity to respond to its *Douglas* factor analysis; and (2) the agency created a hostile work environment, which forced him to resign. Neither argument has merit.

As to the first issue, the "essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Here, Wimper was provided notice of the charges against him, and the agency gave him approximately four months to provide two separate responses to those charg-

es.   During that time, the agency gave Wimper an opportunity to examine the evidence against him, and Colonel Young did not render her final decision until she reviewed and considered Wimper's responses.   Accordingly, there was no due process violation.

As to the second issue, there is no evidence that Wimper asserted a hostile work environment claim below. Indeed, the AJ specifically noted that Wimper "does not allege that his resignation was the product of intolerable working conditions."   *Wimper*, 2014 MSPB LEXIS 7383, at *9.   In any event, Wimper's hostile work environment claim "fails to recognize that a removal cannot create a hostile work environment that an employee feels forced to leave from, because it necessarily forces the employee from that environment."   Respondent's Br. 11-12.

## CONCLUSION

Wimper failed to establish, by a preponderance of the evidence, that his resignation was involuntary.   Because Wimper failed to raise a nonfrivolous allegation that, if proven, could establish the Board's jurisdiction over his appeal, he was not entitled to a hearing before the Board. Accordingly, we affirm the Board's decision that it lacked jurisdiction.

## **AFFIRMED**

### COSTS

No costs.