# United States Court of Appeals for the Federal Circuit

2007-3119

JEFFREY W. PARROTT,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF HOMELAND SECURITY,

Intervenor.

David G. Schiller, Schiller & Schiller, PLLC, of Raleigh, North Carolina, argued for petitioner.

Jeffrey A. Gauger, Acting Associate General Counsel, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent. With him on the brief were B. Chad Bungard, General Counsel, and Rosa M. Koppel, Deputy General Counsel. Of counsel was Sara B. Rearden, Attorney.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for intervenor. On the brief were Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director, and Claudia Burke, Attorney.

Appealed from:   Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3119

JEFFREY W. PARROTT,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF HOMELAND SECURITY,

Intervenor.

Petition for review of the Merit Systems Protection Board in DC-0752-06-0058-I-1.

---

DECIDED: March 12, 2008

---

Before SCHALL, BRYSON, and MOORE, Circuit Judges.

SCHALL, Circuit Judge.

Jeffrey W. Parrott is a former employee of the Transportation Security Administration ("TSA" or "agency"), Department of Homeland Security. He resigned from his position with TSA on May 27, 2005. Subsequently, he appealed to the Merit Systems Protection Board ("Board"), alleging that his resignation was involuntary and therefore constituted a constructive removal. Following a hearing, the administrative judge ("AJ") to whom the appeal was assigned issued an initial decision in which he

held that Mr. Parrott had failed to establish that his resignation was involuntary. <u>Parrott v. Dep't of Homeland Sec.</u>, No. DC-0752-06-0058-I-1, slip op. at 16 (M.S.P.B. Feb. 22, 2006) ("<u>Initial Decision</u>"). He therefore dismissed the appeal for lack of jurisdiction. <u>Id.</u> The AJ's initial decision became the final decision of the Board on December 4, 2006, when the Board denied Mr. Parrott's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115(d). <u>Parrott v. Dep't of Homeland Sec.</u>, 104 M.S.P.R. 171 (2006) ("<u>Final Decision</u>"). Mr. Parrott petitions for review, and the Department of Homeland Security has intervened. We affirm.

BACKGROUND

I.

From February of 2002 to October of 2005, Mr. Parrott was employed by TSA in North Carolina at Raleigh-Durham Airport ("RDU"). <u>Initial Decision</u> at 2.[1] From July of 2002 until the end of his employment, he held the position of Assistant Federal Security Director. <u>Id.</u> During the relevant period of time, Ron Juhl was the Federal Security Director at RDU and Mr. Parrott's supervisor. <u>Id.</u>

Following certain security breaches at RDU and various complaints to TSA headquarters by Mr. Parrott about Mr. Juhl, TSA conducted a "site visit," or preliminary inquiry, at RDU in January of 2005. <u>Id.</u> This was followed by a full-scale management inquiry in March of 2005. <u>Id.</u> In due course, the team conducting the inquiry prepared a management inquiry report, which was referred to the TSA Professional Review Board

---

[1] Mr. Parrott challenges certain of the Board's findings of fact. We have concluded, however, that the Board's findings are supported by substantial evidence. <u>See</u> <u>Bolton v. Merit Sys. Prot. Bd.</u>, 154 F.3d 1313, 1316 (Fed. Cir. 1998) (findings of fact of the Board are to be affirmed if they are supported by substantial evidence).

2007-3119                                    2

("PRB"). Id. at 2–3. The PRB is authorized to review alleged incidents of misconduct or mismanagement involving senior officials of TSA. Id. at 3.

On April 22, 2005, while the PRB was considering the management inquiry report, PRB Chair Charles Kielkopf sent Mr. Parrott an email.[2] Id. In the email, Mr. Kielkopf stated that it had been determined that, "in order to properly address issues raised in the management inquiry, formal PRB involvement was appropriate." Id. Mr. Kielkopf further stated: "This notification is simply to inform you that the PRB will soon meet on serious issues that relate to you and your employment with TSA. Once the PRB meets you will be notified of the decision of the Board." Id. In due course, the PRB voted to propose Mr. Parrott's removal based upon the charges of "Unacceptable leadership performance" and "Violation of Standard Operating Procedures." Id. at 4.

On May 27, 2005, at approximately 10:00 a.m., Thomas Mulhern, TSA's Program Executive Officer for Employee Relations; Dario Compain, TSA's Southeast Area Director; and Kathleen Connon, a TSA attorney-advisor, met with Mr. Parrott at RDU. Id. Mr. Compain began the meeting by stating that TSA had decided that Mr. Parrott and Mr. Juhl should be relieved of their duties immediately.[3] Id. at 4–5. Mr. Compain also stated that PRB had decided to issue a notice of proposed removal to Mr. Parrott and that he was prepared to present the notice that day. Id. Mr. Compain explained the nature of the charges in the notice and indicated that a security breach in which 200 unscreened bags were placed on airplanes at RDU served as at least partial justification for the proposed removal action. Id. at 5. Mr. Parrott asked to read the notice of

_____

[2] The Chair of the PRB is authorized to act as the proposing official for any disciplinary or adverse action requiring a proposal and decision.

[3] The agency issued a notice of proposed removal to Mr. Juhl and terminated his employment. Initial Decision at 4.

proposed removal.  Id.  Mr. Compain refused, however, stating that Mr. Parrott could only read the notice when it was formally served on him.  Id.  After Mr. Compain left the meeting, Mr. Mulhern explained to Mr. Parrott that he had three options: (a) receive the notice of proposed removal and later resign in lieu of termination; (b) respond to the removal notice before Theresa Bertucci, an Assistant Administrator for TSA, who would be the deciding official; or (c) resign that day for "personal reasons."  Id. at 5–6.  Ms. Connon explained the PRB process to Mr. Parrott, as well as the process involved in an appeal to the Board.  Id. at 6.  Mr. Parrott then had approximately one hour alone to make phone calls and consider his options.  Id.  During this period, he unsuccessfully sought to contact his attorney.  Id. at 13.

Eventually, Mr. Parrott decided to accept the option of resigning for personal reasons.  In that regard, Mr. Mulhern reviewed with him a sample agreement and discussed with him the terms of his contemplated resignation (such as effective date, matters relating to annual and administrative leave, and information TSA would provide to prospective employers).  Id. at 6.  Eventually, Mr. Mulhern gave Mr. Parrott a draft agreement to review.  Id. at 7.  After certain changes were made, Mr. Mulhern provided Mr. Parrott with the final agreement, which was titled "SETTLEMENT AGREEMENT AND RELEASE."  Id.  Before Mr. Parrott signed the agreement, Mr. Mulhern asked him if he was sure he wanted to resign.  Id.  Mr. Parrott responded that he was and signed the agreement.  Id.  The agreement provided that Mr. Parrott and TSA were voluntarily entering into the agreement in order to settle all claims between them; that Mr. Parrott would resign in lieu of being subject to other administrative action; that the agreement was reached freely and voluntarily; and that Mr. Parrott waived all appellate rights,

including the right to appeal to the Board. Id. Mr. Parrott signed the settlement agreement around 2:00 p.m. and submitted his letter of resignation. Id. In the letter, Mr. Parrott stated that he was resigning from TSA for personal reasons. Roughly four hours elapsed between Mr. Parrott's being informed of the proposed removal action and the submission of his resignation.

On June 18, 2005, Mr. Parrott filed an appeal with the Board, alleging that his resignation was involuntary and therefore constituted a constructive removal. Id. The appeal was dismissed as premature, however, because, pursuant to his agreement with TSA, Mr. Parrott's resignation was not effective until September 30, 2005. Id. at 1, 7. Mr. Parrott re-filed his appeal on October 27, 2005, again alleging an involuntary resignation and constructive removal. Id. at 7.

## II.

The scope of the Board's subject matter jurisdiction is defined by 5 U.S.C. § 7701(a), which provides in relevant part that "[a]n employee . . . may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation." Section 7513(d) of Title 5 grants the Board jurisdiction to hear appeals of certain enumerated adverse actions taken by an agency against an employee. The enumerated adverse actions include removals. 5 U.S.C. § 7513(d)(1) (2000); 5 C.F.R. § 1201.3(a)(2) (2007). A voluntary action by an employee—such as a resignation—lies outside the Board's jurisdiction. Garcia v. Dep't of Homeland Sec., 437 F.3d 1322, 1328–29 (Fed. Cir. 2006) (en banc). However, the Board does have jurisdiction "over an appeal filed by an employee who has resigned

. . . if . . . his or her resignation . . . was involuntary and thus tantamount to forced removal." Shoaf v. Dep't of Agric., 260 F.3d 1336, 1341 (Fed. Cir. 2001).

Pursuant to 5 C.F.R. § 1201.56(a)(2), "[t]he appellant has the burden of proof, by a preponderance of the evidence, with respect to . . . [i]ssues of jurisdiction." See 5 U.S.C. § 7701(a) ("Appeals shall be processed in accordance with regulations prescribed by the Board."). Thus, before the Board, Mr. Parrott had the burden of establishing by a preponderance of the evidence that his resignation was involuntary. An employee may demonstrate that his or her resignation was involuntary by demonstrating that the resignation was the product of coercion. Garcia, 437 F.3d at 1329. Coercion is demonstrated by showing that the agency essentially imposed the terms of the resignation on the employee, that the employee had no alternative to resignation, and that the resignation was a result of improper acts by the agency. Id. at 1328; Staats v. United States Postal Serv., 99 F.3d 1120, 1124 (Fed. Cir. 1996). In a case involving an alleged constructive removal, "once a claimant makes non-frivolous claims of Board jurisdiction, namely claims that, if proven, establish the Board's jurisdiction, then the claimant has a right to a hearing." Garcia, 437 F.3d at 1344. Thereafter, "[a]t the hearing, the claimant must prove jurisdiction by a preponderance of the evidence. If the Board determines that the claimant [failed] to prove jurisdiction by a preponderance of the evidence, then the Board does not have jurisdiction and the case is dismissed for lack of jurisdiction." Id.

Addressing the jurisdictional issue presented by Mr. Parrott's appeal, the AJ determined that Mr. Parrott had made non-frivolous allegations of Board jurisdiction so as to entitle him to a hearing on the voluntariness of his resignation. Initial Decision at

7. Thereafter, following a hearing in which he found the facts set forth above, the AJ ruled that Mr. Parrott had failed to establish that his resignation was involuntary. Id. at 16. The AJ determined that the TSA did not impose the terms of the settlement agreement upon Mr. Parrott, finding that TSA adequately explained the proposed removal and gave Mr. Parrott sufficient time to make his decision. Id. at 12–13. The AJ also determined that Mr. Parrott possessed reasonable alternatives to resignation for personal reasons insofar as he could have waited to receive the notice of proposed removal and resigned thereafter, or he could have attempted to appeal the proposed termination. Id. at 16. Notwithstanding the time constraint placed upon Mr. Parrott, the AJ determined that TSA had not engaged in coercive conduct because it had given Mr. Parrott sufficient time in which to make an informed decision. Id. at 15–16. Thus, the AJ concluded that Mr. Parrott's resignation was voluntary and that the Board therefore did not possess jurisdiction over his appeal. Id. at 16.

In due course, the Initial Decision became the final decision of the Board when the Board denied Mr. Parrott's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115(d). See generally Final Decision. Board Member Sapin, however, dissented from the denial of the petition for review. In her dissent, Member Sapin focused on the short period of time Mr. Parrott had to consider the three options that Mr. Mulhern presented to him, the fact that TSA refused to allow Mr. Parrott additional time to contact his attorney, and the refusal of TSA to show Mr. Parrott the notice of proposed removal. Id. at 178–79, 181 (Sapin, Member, dissenting). In Member Sapin's view, TSA had failed to provide a satisfactory explanation for its decision to limit Mr. Parrott's time for decision to a relatively short period of time on May

27th. Id. at 179. Accordingly, Member Sapin concluded that Mr. Parrott had shown by a preponderance of the evidence that his resignation was involuntary, thereby establishing Board jurisdiction over his appeal. Id. at 182.

Board Chairman McPhie wrote a concurring opinion responding to Member Sapin's dissent. Chairman McPhie emphasized the email that Mr. Parrott had received, which signaled in advance the possibility of his removal; the fact that TSA need not have given Mr. Parrott the option of resigning for personal reasons, thereby rendering any time pressure in determining whether to do so irrelevant; and the fact that TSA acted properly in not presenting the notice of proposed removal to Mr. Parrott, inasmuch as doing so would have limited his ability to resign for personal reasons.[4] Id. at 173–75 (McPhie, Chairman, concurring). Thus, Chairman McPhie concluded that, because Mr. Parrott had failed to prove the involuntariness of his resignation, he had failed to establish Board jurisdiction over his appeal. Id. at 175–76.

## DISCUSSION

Mr. Parrott has timely petitioned for review of the Board's final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9). Pursuant to 5 U.S.C. § 7703(c), we must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an

---

[4] Chairman McPhie wrote: "[The Office of Personnel Management's] instructions to personnel offices provide that when an employee with appeal rights submits a resignation after being notified in writing of a proposed disciplinary action, the circumstances of the resignation must be recorded in the employee's official file." Final Decision, 104 M.S.P.R. at 175 (McPhie, Chairman, concurring) (emphasis added); see also Guide to Processing Personnel Actions 31-5, available at http://www.opm.gov/feddata/gppa/gppa31.pdf ("Agency findings should be documented . . . when the employee has appeal rights and has been notified in writing of an agency action BEFORE the resignation was submitted." (emphases in original)). Therefore, had Mr. Parrott received the notice of proposed removal, TSA would have been required to record the reason for his removal in his personnel file, thus limiting Mr. Parrott's ability to state that his resignation was for "personal reasons."

abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. See also Kewley v. Dep't of Health & Human Servs., 154 F.3d 1357, 1361 (Fed. Cir. 1998). Under this standard, we review determinations of the Board concerning its jurisdiction de novo. Forest v. Merit Sys. Prot. Bd., 47 F.3d 409, 410 (Fed. Cir. 1995); Vesser v. Office of Pers. Mgmt., 29 F.3d 600, 603 (Fed. Cir. 1994). Findings of fact underlying the Board's jurisdictional decision are reviewed for substantial evidence. Bolton, 154 F.3d at 1316. As noted above, we have concluded that the Board's findings of fact are supported by substantial evidence.

On appeal, Mr. Parrott challenges the Board's conclusion that his resignation was voluntary. In so doing, he focuses on the short period of time he was given to decide whether to accept the terms of the settlement agreement and resign for personal reasons in lieu of having TSA proceed with its removal action. Citing Terban v. Department of Energy, 216 F.3d 1021 (Fed. Cir. 2000), and Middleton v. Department of Defense, 185 F.3d 1374 (Fed. Cir. 1999), Mr. Parrott contends that the Board erred as a matter of law in failing to consider, in connection with the issue of involuntariness, the time pressure that he was under. We do not agree.

It is true that, in Terban, we stated that "the most probative evidence of involuntariness will usually be evidence in which there is a relatively short period of time between the employer's alleged coercive act and the employee's retirement." 216 F.3d at 1024. In this case, however, there was no "coercive act" on the part of TSA. Pursuant to 5 U.S.C. § 7513(b) and TSA Management Directive No. 1100.75-3 6(H)(3), Mr. Parrott was entitled to receive 30 days' advance notice of a proposed removal,

stating the reason for the action; the evidence supporting it; and his rights with respect to representation. Mr. Parrott also was entitled to a reasonable time to respond to the action orally and in writing. See 5 U.S.C. § 7513(b)(2); TSA Management Directive No. 1100.75-3 6(H)(3)(a)(1)(d). To comply with these provisions, TSA could have simply served upon Mr. Parrott the notice of proposed removal, after which the only options available to him would have been a resignation in lieu of termination or a challenge to the proposed action. Transcript of Trial Hearing at 105–06, Initial Decision. Instead, as seen, TSA chose to offer Mr. Parrott a third, more attractive option: resignation for personal reasons. By resigning prior to the service of the notice of proposed removal, Mr. Parrott managed to obtain certain concessions on the part of TSA and avoid a negative employment reference that would have arisen had he been removed or had he resigned after service of the removal notice. Thus, rather than just presenting Mr. Parrott with a notice of proposed removal, which is all it was required to do, TSA offered Mr. Parrott an option that it was under no obligation to provide, one that offered benefits to Mr. Parrott. In that setting, giving Mr. Parrott only a short time period within which to accept that option was not coercive, since having an additional, and potentially attractive, choice could only have been of benefit to him, even though he might have preferred to have that choice remain open for a longer period of time. See Staats, 99 F.3d at 1126 (Time pressure felt by Staats "was the product of his desire not to forfeit those benefits [early retirement and lump-sum bonus], which the agency was not required to offer in the first place."). We thus agree with Board Chairman McPhie that "[a]lthough [Mr. Parrott] was presented with a difficult choice on May 27, 2005, neither the choice itself not the circumstances under which it was made were the result of

improper agency action." Final Decision, 104 M.S.P.R. at 175 (McPhie, Chairman, concurring).

In other words, when, on May 27, 2005, Mr. Mulhern presented Mr. Parrott with the option of resigning that day for personal reasons, he did not engage in a "coercive act." Under these circumstances, the fact that Mr. Parrott had a relatively short period of time to decide whether to sign the settlement agreement and resign in lieu of receiving the notice of proposed removal did not render his resignation involuntary. "[A] choice is not involuntary simply because an employee is faced with an inherently unpleasant situation or his choice is limited to two unpleasant alternatives." Terban, 216 F.3d at 1026 (citing Covington v. Dep't of Health & Human Servs., 750 F.2d 937, 942 (Fed. Cir. 1984)).

Finally, because TSA did not engage in coercive conduct, this case is entirely different from Middleton, upon which Mr. Parrott relies. In that case, Dr. John Middleton was informed that he was being removed from his position as an assistant principal at a high school located on a United States Army base in Turkey. Middleton, 185 F.3d at 1378. Prior to the effective date of his removal, Dr. Middleton retired pursuant to a settlement agreement with his employer, the Department of Defense Dependent Schools ("DODDS"). Id. at 1377–78. Subsequently, he appealed to the Board, contending that his retirement was involuntary because it was the product of coercion, duress, and misinformation. Id. at 1378. Upon concluding that Dr. Middleton had failed to make non-frivolous allegations of involuntariness to warrant a hearing, the Board dismissed the appeal for lack of jurisdiction. Id. at 1377. Dr. Middleton then petitioned this court for review.

On appeal, we held that Dr. Middleton had in fact made non-frivolous allegations of involuntariness so as to entitle him to a hearing. Id. at 1380. We therefore vacated the decision of the Board that it lacked jurisdiction and remanded the case to the Board for a hearing on the issue of voluntariness. Id. at 1377. Dr. Middleton alleged that, at a time when he had recently undergone surgery for kidney stones, was recovering from broken ribs and a gallbladder operation, and was suffering from prostate cancer, DODDS put him under extreme time pressure to leave Turkey. Id. at 1381–82. He also alleged that he was given incorrect information concerning retention of benefits and Board appeal rights. Id. at 1381–83. Middleton does not help Mr. Parrot because, in this case, the TSA did not engage in coercive acts, let alone the kind of coercive acts alleged in Middleton.

## CONCLUSION

For the foregoing reasons, we affirm the final decision of the Board that it lacked jurisdiction over Mr. Parrott's appeal.

## AFFIRMED

Each party shall bear its own costs.