NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM ROBERT KELLY,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent,*

AND

**DEPARTMENT OF COMMERCE,**
*Intervenor.*

---

2013-3178

---

Petition for review of the Merit Systems Protection Board in No. DC0752120131-I-1.

---

Decided: June 24, 2014

---

WILLIAM ROBERT KELLY, of Kill Devil Hills, North Carolina, pro se.

LINDSEY SCHRECKENGOST, Attorney, Office of the General Counsel, Merit Systems Protection Board, of

Washington, DC, for respondent. With her on the brief was BRYAN G. POLISUK, General Counsel.

SHELLEY D. WEGER, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for intervenor. With her on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and REGINALD T. BLADES, JR., Assistant Director. Of counsel on the brief was CHRISTIANN COLPOYS BUREK, Office of the General Counsel, United States Department of Commerce, of Washington, DC.

————————————

Before PROST, *Chief Judge*, BRYSON, and MOORE, *Circuit Judges.*

PER CURIAM.

William Robert Kelly appeals from the final order of the Merit Systems Protection Board (Board) dismissing his appeal for lack of jurisdiction. *Kelly v. Dep't of Commerce*, No. DC0752120131-I-1 (M.S.P.B. July 24, 2013) (*Final Order*). For the reasons discussed below, we *affirm*.

## BACKGROUND

Dr. Kelly worked as a Research Chemist for the National Institute of Standards and Technology (NIST) at the Department of Commerce (Agency). In 2009, Dr. Kelly alleged that one of his supervisors plagiarized the work of another colleague. Dr. Kelly reported the alleged plagiarism to several other NIST employees and sought to have his supervisor's name removed from the publication at issue.

Partly because of his plagiarism allegations, Dr. Kelly discussed the possibility of transferring out of his NIST division with Laboratory Director Dr. Willie May later

that year. He told Dr. May that he was unhappy with the manner in which his plagiarism complaint was being handled and expressed his desire to retire. Dr. Kelly was subsequently presented with a Resolution Agreement that required him to work from home for a year and then resign effective September 30, 2011. Dr. Kelly edited the agreement, requesting removal of certain provisions but not the provision requiring him to resign. The final version of the Resolution Agreement signed by Dr. Kelly on October 7, 2010 included a provision stating that he agrees to "[v]oluntarily and irrevocably resign from employment with the Agency no later than September 30, 2011." Dr. Kelly requested to withdraw his resignation but the Agency denied Dr. Kelly's request. Dr. Kelly signed the necessary paperwork on October 13, 2011, effectively retiring as of September 30, 2011.

On November 22, 2011, Dr. Kelly filed an appeal with the MSPB seeking reinstatement at NIST. The MSPB treated Dr. Kelly's claim as an appeal of an involuntary resignation under 5 U.S.C. Chapter 75 (Chapter 75 appeal) and as an Individual Right of Action (IRA) appeal based on activity protected under the Whistleblower Protection Act (WPA). The administrative judge (AJ) ordered Dr. Kelly to produce various documents relating to the Resolution Agreement, including communications between Dr. Kelly and the Office of Special Counsel (OSC), because they related to disputed facts concerning Dr. Kelly's resignation. The AJ subsequently held a hearing on the limited jurisdictional issue of whether Dr. Kelly's resignation was voluntary. At the hearing, the AJ allowed testimony of two witnesses, who were requested by both Dr. Kelly and the Agency. However, the AJ did not allow certain other witnesses whose testimony at the hearing was sought only by Dr. Kelly.

The AJ dismissed Dr. Kelly's Chapter 75 appeal for lack of jurisdiction, finding that Dr. Kelly did not establish by preponderant evidence that his resignation was

involuntary.    *Kelly v. Dep't of Commerce*, No. DC0752120131-I-1, slip op. at 7 (M.S.P.B. May 30, 2012) (*Initial Order*).   The AJ similarly dismissed Dr. Kelly's IRA appeal, concluding that Dr. Kelly's resignation was voluntary and thus not a prohibited personnel action within the meaning of 5 U.S.C. § 2302(a)(2)(A).  *Id.* at 12.

The Board affirmed.  *Final Order* at 3.  It found that the AJ correctly concluded that Dr. Kelly did not establish Board jurisdiction over either his Chapter 75 appeal or his IRA claim.  The Board further found that the AJ did not abuse her discretion in denying Dr. Kelly's request to present certain witnesses concerning his IRA claim.  *Id.* at 5.  Finally, the Board concluded that the AJ did not abuse her discretion in compelling Dr. Kelly to produce the OSC communications and that any error was harmless. *Id.* at 6–7.

Dr. Kelly appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review de novo the question of whether the Board has jurisdiction to adjudicate an appeal.  *Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008).   In order to establish jurisdiction, Dr. Kelly has to prove that his resignation was not voluntary.  A resignation is presumed voluntary unless an employee shows that the resignation was the product of misinformation or deception, or the product of coercion by the Agency.  *Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000).

Dr. Kelly argues that the Board erred in dismissing his Chapter 75 claim for lack of jurisdiction based on the incorrect conclusion that his resignation was voluntary. Pet. Br. 3.  Dr. Kelly also argues that because his termination was involuntary, it was a prohibited personnel action within the meaning of the WPA.  *Id*. at 4–8.  Ac-

cordingly, Dr. Kelly contends that the Board had jurisdiction over his IRA claim as well.

Dr. Kelly makes two evidentiary arguments on appeal. He contends that if the AJ had permitted him to present Dr. Katharine Gebbie, "who was privy to high-level management discussions and actions," as a witness at the jurisdictional hearing, then he would have shown that the Resolution Agreement was a "cleverly disguised" retaliatory action for his whistleblowing. Pet. Br. 3. We interpret Dr. Kelly's argument as one alleging that the AJ abused her discretion by not allowing him to present the testimony of Dr. Gebbie. Dr. Kelly also argues that the AJ committed reversible error in compelling production of the OSC communications. *Id.* at 9. He contends that the AJ exceeded her authority in ordering production of these communications because 5 U.S.C. § 1214(a)(2)(B) specifies that certain communications with the OSC are not admissible without consent. *Id.* at 19–28. He further asserts that the AJ's error in compelling production was not a procedural error but instead a violation of his substantive rights.[1] *Id.* at 29–30.

We agree with the government that Dr. Kelly failed to establish jurisdiction over his appeal. Dr. Kelly does not argue that his resignation was the product of misinformation or deception, and there is substantial evidence that Dr. Kelly's resignation was not the product of coercion. The AJ concluded, based mostly on Dr. Kelly's own admissions, that Dr. Kelly initiated the discussion of his resignation, actively negotiated the terms of the Resolution Agreement, and understood the terms of the agree-

---

[1] Dr. Kelly also asserts that the AJ's order compelling production of the OSC communications violates his Fourth, Fifth, and Sixth Amendment rights. Pet. Br. 31–42. We conclude that Dr. Kelly failed to raise these arguments in the proceedings below.

ment when he signed it. *Initial Decision* at 5–6. The AJ found no evidence that Dr. Kelly was coerced into signing the Resolution Agreement, but instead found that Dr. Kelly believed that the Resolution Agreement was a welcome opportunity to separate himself from his division of NIST. *Id.* We therefore conclude that Dr. Kelly did not rebut the presumption that his resignation was voluntary.

We also hold that the Board correctly concluded that it lacked jurisdiction over his IRA appeal. To establish jurisdiction, Dr. Kelly needed to raise a nonfrivolous allegation that he made a disclosure that "was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)." *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). Because Dr. Kelly's resignation was voluntary, it does not constitute a prohibited personnel action within the scope of the WPA. *Dick v. Dep't of Veterans Affairs*, 290 F.3d 1356, 1362 (Fed. Cir. 2002); *see also Jackson v. Dep't of Veterans Affairs*, 97 F. App'x 297, 301 (Fed. Cir. Apr. 12, 2004); *Jay v. Dep't of Navy*, 90 M.S.P.R. 635, 641 (2001). The Board therefore correctly concluded that it lacked jurisdiction.

We find no reversible error in the AJ's denial of Dr. Kelly's request to present Dr. Gebbie as a witness at the jurisdictional hearing. To be reversible error, the petitioner must show that the error could have affected the outcome of the case. *Curtin v. Office of Personnel Mgt.*, 846 F.2d 1373, 1378–79 (Fed. Cir. 1988); *Veneziano*, 189 F.3d at 1369. On appeal, Dr. Kelly argues that Dr. Gebbie's testimony would have established that the Agency proposed the Resolution Agreement in retaliation to facilitate Dr. Kelly's departure from NIST. Pet. Br. 3–4; *see also* Pet. Br. app. at 581. But the Agency's motivation in proffering the Resolution Agreement is not relevant to whether Dr. Kelly voluntarily entered into the Resolution Agreement. There is no suggestion in Dr. Kelly's filings that Dr. Gebbie's testimony would have

gone to the voluntariness of his acceptance of the Resolution Agreement, which is dispositive of his claim. Importantly, Dr. Kelly provides no explanation of how the excluded witness's testimony would have changed the outcome of the case.

Finally, the AJ's order compelling production of the OSC related communications does not warrant reversal. This correspondence was not taken into account in the jurisdictional determination. *See Final Order* at 7. Any error in compelling production of this correspondence was therefore harmless error. *Handy v. U. S. Postal Serv.*, 754 F.2d 335, 338 (Fed. Cir. 1985).

CONCLUSION

We have considered the remainder of Dr. Kelly's arguments and do not find them persuasive. We *affirm* the Board's dismissal of Dr. Kelly's appeal.

**AFFIRMED**

COSTS

Each side shall bear its own costs.