**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JEFF LOUCK,
                        Appellant,

                v.

DEPARTMENT OF AGRICULTURE,
                        Agency.

DOCKET NUMBER
SF-0752-21-0226-I-1

DATE:  April 19, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jeff Louck, San Francisco, California, pro se.

John Montgomery, Esquire, Alexandria, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed as untimely his involuntary resignation appeal.  For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and DISMISS the appeal for lack of jurisdiction.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant held the position of Lead Management Support Specialist with the Food and Nutrition Service. Initial Appeal File (IAF), Tab 1 at 1, Tab 14 at 28-29. He filed a formal equal employment opportunity (EEO) complaint alleging discrimination and harassment on the basis of race, sex, and political affiliation on July 6, 2018. IAF, Tab 11 at 11-23, Tab 14 at 24. The appellant alleged, in part, that an agency employee had defaced a portrait of President Trump and that management had not held the individual appropriately accountable, demonstrating discrimination towards Caucasian males. IAF, Tab 11 at 11. By letter dated July 10, 2018, the appellant informed agency management that he would be "resigning" and that his last day would be July 24, 2018. *Id*. at 28. The agency processed his resignation effective August 4, 2018. *Id*. at 29. The appellant amended his EEO complaint on November 14, 2018. *Id*. at 20.

On February 28, 2021, the appellant filed the present appeal alleging that he had been subjected to an involuntary resignation. IAF, Tab 1 at 3. He stated that he had filed a report with the Office of Inspector General (OIG) about "an employee who committed a hate speech racist crime and Hatch Act[2] crimes," but that OIG had not appropriately punished the individual. *Id*. at 5. The appellant stated that the agency "retaliated against [him] by telling [him] to quit or be fired," and that "they were not stupid enough to put their ultimatum in writing." *Id*. He maintained that, before he was "forced to quit" in July 2018, he had received very good performance reviews and had received a cash award only 2 months prior to making his report to the OIG. *Id*. The appellant submitted a final agency decision (FAD) dated January 7, 2021, stating that the Equal Employment Opportunity Commission (EEOC) had issued a summary judgment decision in favor of the agency. *Id*. at 7-12.

---

[2] An Act to Prevent Pernicious Political Activities, Pub. L. No. 76-252, 53 Stat. 1147 (1939) (codified as amended at 5 U.S.C. chapter 73, subchapter III).

In an acknowledgment order, the administrative judge then assigned to the appeal issued an order on jurisdiction, which provided the appellant proper notice regarding involuntary resignations and explained that he would be entitled to a hearing if he made a nonfrivolous allegation that his appeal was within the Board's jurisdiction. IAF, Tab 2 at 2-4. The administrative judge also issued an order on timeliness, notifying the appellant that his appeal appeared to be untimely filed by 913 days and ordering him to submit evidence and argument showing that the appeal was timely filed or that good cause existed for the delay. *Id*. at 4-7.

The appellant argued that the administrative judge should not be assigned to his case, given his prior telephonic contact with her in February 2019. IAF, Tab 5 at 4. At that time, the administrative judge served as Interim EEO Director for the Board and the appellant had contacted her regarding his allegations against the agency, "to seek information on two crimes committed by a federal employee." IAF, Tab 5 at 5, Tab 6 at 1. He submitted two emails that he had sent to the Board at that time, complaining about his interaction with the administrative judge and her purported refusal to assist him. IAF, Tab 5 at 5, 7. The appellant also submitted a February 2019 email that he received from the Board instructing him of the Board's limited jurisdiction and how to file an appeal. *Id*. at 6. The Board also informed him that the Office of Special Counsel (OSC), and not the Board, has the authority to investigate allegations of prohibited personnel practices and violations of the Hatch Act. *Id*. at 6. The chief administrative judge issued a notice informing the parties that the appeal would be reassigned to another administrative judge because of the prior telephonic contact about matters related to the appeal. IAF, Tab 6 at 1-2.

The appellant filed several pleadings, which largely concerned the underlying allegations in his OIG and EEO complaints and his dissatisfaction with the handling of his case by the EEOC. IAF, Tab 10 at 4-8, Tab 11 at 4-5, Tab 15 at 4-5, Tab 16 at 4-5, Tab 20 at 4. He also submitted various documents

related to his EEO complaint. IAF, Tab 11 at 6-23, Tab 15 at 6-8. Regarding the issue of timeliness, the appellant argued that he had raised his involuntary resignation claim and "tried to file a complaint" with the Board when he spoke to the administrative judge in February 2019. IAF, Tab 5 at 4, Tab 11 at 4. He asserted that the administrative judge with whom he spoke had "blocked" him from filing a complaint during their telephone call. IAF, Tab 10 at 4, Tab 11 at 4. Finally, regarding the issue of jurisdiction, the appellant asserted that his involuntary resignation claim fell into the categories of intolerable working conditions and that the agency threatened a removal that could not be substantiated. IAF, Tab 5 at 4. He claimed that he had suffered discrimination and a toxic work environment for over 5 years. IAF, Tab 10 at 4. The appellant challenged the EEOC decision finding that he had not shown discrimination or a hostile work environment, when the OIG found that his allegations about the defacing of President Trump's portrait were correct. IAF, Tab 10 at 4, Tab 11 at 4-5, Tab 15 at 4, Tab 16 at 4-5, Tab 20 at 4.

The chief administrative judge issued an order reassigning the appeal to another administrative judge. IAF, Tab 19 at 1. The new administrative judge issued a notice of close of record, noting that the parties had sufficient time to make submissions on the timeliness and jurisdiction issues. IAF, Tab 21 at 1. Without holding the requested hearing, the administrative judge dismissed the appeal as untimely filed. IAF, Tab 22, Initial Decision (ID) at 1, 9. He found that the appellant did not establish that he timely filed his appeal, which was not rendered timely by the agency's issuance of the FAD because the involuntary resignation claim was not an accepted issue in the appellant's EEO complaint. ID at 3-6. The administrative judge found that the appellant had not shown good cause for his untimely filing and that his contact with the Board in February 2019, two years before he filed his appeal, did not demonstrate that he exercised due diligence or ordinary prudence in pursuing his claim. ID at 7-9. Because he

dismissed the appeal on the grounds of timeliness, the administrative judge did not reach the issue of jurisdiction. ID at 2 n. 2.

The appellant has filed a lengthy petition for review, challenging the administrative judge's findings on timeliness and repeating his complaints against the Board, his employing agency, and the EEOC's treatment of his complaint. Petition for Review (PFR) File, Tab 1 at 4-10. He also submits email communications between himself and various agency personnel regarding the underlying allegations in his OIG and EEO complaints. *Id.* at 11-21. The agency has filed a response, arguing that the petition for review presents no basis for overturning the initial decision. PFR File, Tab 5 at 4-5.

The Office of the Clerk of the Board issued a letter to the appellant, informing him that his petition for review contained multiple violations of the Board's Policy on Prohibited Conduct, and outlined "unacceptable conduct" such as profanity and disparaging language based on race, sex, national origin, and other protected classes. PFR File, Tab 3 at 1. The letter constituted a warning to the appellant to refrain from engaging in this behavior or suffer potential sanctions. *Id.* at 2. The appellant filed a response to the Board's "despicable" letter, arguing that the Board had "harassed" him and denying that he had used disparaging language. PFR File, Tab 4 at 4-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge erred by deciding the timeliness issue without first determining whether the Board has jurisdiction over the appeal.</u>

Although the existence of Board jurisdiction is a threshold issue, in an appropriate case, an administrative judge may dismiss an appeal as untimely filed if the record on timeliness is sufficiently developed and shows no good cause for the untimely filing. *Hanna v. U.S. Postal Service*, 101 M.S.P.R. 461, ¶ 6 (2006). Such an approach is not appropriate, however, if the jurisdictional and timeliness issues are inextricably intertwined, such that the resolution of the timeliness issue depends on whether the appellant was subjected to an appealable action. *Id.* The

issues of timeliness and jurisdiction are generally considered to be inextricably intertwined in an involuntary resignation appeal because a failure to inform an employee of his Board appeal rights may excuse an untimely filed appeal, and whether the agency was obligated to inform the employee of such appeal rights depends on whether he was affected by an appealable action. *Id.*

Here, the administrative judge issued orders on timeliness and jurisdiction in the acknowledgment order. IAF, Tab 2 at 2-7. However, the administrative judge did not reach the issue of jurisdiction concerning the appellant's involuntary resignation claim in the initial decision. ID at 2 n.2. Because the issues of timeliness and jurisdiction are inextricably intertwined in this appeal, the administrative judge should not have dismissed the appeal on timeliness grounds without first addressing jurisdiction. *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 8, *aff'd per curiam*, 469 F. App'x 852 (Fed. Cir. 2011). We need not remand this appeal, however, because the appellant received proper jurisdictional notice as to the involuntary resignation claim and he availed himself of the opportunity to present argument on the jurisdictional issue in numerous pleadings. IAF, Tab 2 at 2-4, Tab 5 at 4, IAF, Tab 10 at 4, Tab 11 at 4-5, Tab 15 at 4, Tab 16 at 4-5.

The appellant failed to nonfrivolously allege that his resignation was involuntary.

On review, the appellant repeats his assertion that a management official told him to "quit or be fired" and states that he was subject to disciplinary action. PFR File, Tab 1 at 5, 10; IAF, Tab 1 at 5, Tab 8 at 4, Tab 10 at 4. He also repeats his claims that his working conditions were so intolerable due to discrimination as a "legal U.S. citizen Caucasian male" and politically motivated violations of the Hatch Act that he had no choice but to resign. PFR File, Tab 1 at 4-5; IAF, Tab 10 at 5-7, Tab 11 at 4-5. Contrary to the appellant's assertion on review that it "isn't [his] responsibility to address" the issue of jurisdiction, an appellant has the burden of proving Board jurisdiction over his appeal. PFR File, Tab 1 at 6; *see* 5 C.F.R. § 1201.56(b)(2)(i)(A). For the following reasons, we find that the

appellant has not presented nonfrivolous allegations of Board jurisdiction and he is not entitled to a jurisdictional hearing. *See Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994).

Resignations are presumed to be voluntary, but the Board has jurisdiction over an appeal filed by an employee who has resigned if his resignation was involuntary and tantamount to a forced removal. *Parrott v. Merit Systems Protection Board*, 519 F.3d 1328, 1332 (Fed. Cir. 2008) (internal citations omitted). To establish Board jurisdiction over a constructive adverse action, such as an involuntary resignation, an appellant must show that: (1) he lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived him of that choice. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013). The touchstone of the voluntariness analysis is whether, considering the totality of the circumstances, factors operated on the employee's decision-making process that deprived him of freedom of choice. *Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 12 (2010). Where, as here, an appellant raises allegations of discrimination and reprisal in connection with an involuntariness claim, evidence of such discrimination or reprisal may be considered only insofar as it relates to the issue of involuntariness. *Markon v. Department of State*, 71 M.S.P.R. 574, 578-80 (1996). Thus, in an involuntary resignation appeal, evidence of discrimination or reprisal goes to the ultimate question of coercion, i.e., whether under all of the circumstances, working conditions were made so difficult by the agency that a reasonable person in the employee's position would have felt compelled to resign. *Id*.

Regarding the appellant's repeated claims that an agency manager told him to "quit or be fired," if an appellant shows that an agency knew that it would not prevail on a proposed adverse action, the proposed action is coercive and the resulting resignation is involuntary. IAF, Tab 1 at 5, Tab 15 at 7; PFR File, Tab 1 at 5; *see Baldwin v. Department of Veterans Affairs*, 109 M.S.P.R. 392, ¶ 12 (2008). Here, however, the appellant has not alleged that the agency proposed his

removal or any specific disciplinary action at the time of his resignation, and an employee's anticipation of an adverse action does not constitute coercion or duress on the part of the agency. *See Holman v. Department of the Treasury*, 9 M.S.P.R. 218, 220 (1981), *aff'd*, 703 F.2d 584 (Fed. Cir. 1982) (Table).

The appellant's allegations about the underlying claims in and handling of his EEO complaint do not constitute a nonfrivolous allegation that he was deprived of freedom of choice as to his resignation. The bulk of his arguments concerning purported intolerable working conditions consist of his frustration with the outcome of his EEO complaint finding that he had not shown discrimination or a hostile work environment. IAF, Tab 10 at 4, Tab 11 at 4-5, Tab 15 at 4, Tab 16 at 4-5, Tab 20 at 4. Although he maintains that the "conduct of hate and discrimination went on the whole time he worked at the agency," he provides no specifics to support his claim that he experienced a hostile work environment for over 5 years prior to his resignation. IAF, Tab 10 at 4, Tab 11 at 4. The appellant alleges that he was retaliated against for filing an OIG complaint against an agency supervisor for reporting the defacing of President Trump's photograph in February 2018, approximately 5 months prior to his resignation. IAF, Tab 10 at 4. He acknowledges that OIG conducted an investigation into the action, but maintains that the agency did not appropriately discipline the individual and argues that there was "no way [he] could continue to work in that environment." IAF, Tab 1 at 5, Tab 10 at 5. In support of the alleged intolerable conditions, he alleges that the individual who defaced the portrait and another management official chose to sit right in front of him at an ethics training, even though they could have sat anywhere, in order to send a bullying and intimidation message. IAF, Tab 15 at 4. In finding that the appellant has not nonfrivolously alleged that his resignation was involuntary, we do not make a determination about the underlying claims of discrimination or reprisal, but rather find that these allegations do not establish that a reasonable

person would have found these conditions so oppressive that he had no choice but to resign. *See Markon*, 71 M.S.P.R. at 578-80.

The appellant submits evidence for the first time on review, namely February 2018 email correspondence regarding his informal EEO complaint and OIG report concerning the vandalizing of President Trump's portrait. PFR File, Tab 1 at 17-21. He also submits email correspondence with OIG personnel from January 2019, several months after his resignation, regarding his dissatisfaction with OIG's handling of his complaint. *Id*. at 11-21. Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the close of the record below despite the party's due diligence. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980); *see also Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (stating that the Board generally will not consider a new argument raised for the first time on review absent a showing that it is based on new and material evidence). The appellant offers no explanation why he did not submit these emails, sent at least 2 years prior to filing his initial appeal, into the record, particularly since he included portions of the communications in his responses to the jurisdiction and timeliness orders. IAF, Tab 11 at 6-10. Even if we were to consider these documents, they do not support a finding of jurisdiction. The appellant seemingly submits these documents in support of his argument that his appeal was timely filed. *Id*. at 7-8. To the extent that the appellant argues that these documents support his contention that the EEO and OIG complaints were not appropriately handled and contributed to his involuntary resignation, such arguments are unpersuasive.

The record shows that the appellant submitted his letter of resignation only 4 days after filing his formal EEO complaint. IAF, Tab 14 at 24, 28. Contrary to the appellant's claims that the agency took no action on his EEO complaint, by his own admission the agency processed his formal EEO complaint and amendments thereto, which was eventually adjudicated by an EEOC

administrative judge. IAF, Tab 11 at 4, Tab 10 at 8, Tab 14 at 20, 24, 48. Moreover, he states that he has filed an appeal of the FAD and thus is still pursuing his EEO complaint. PFR File, Tab 1 at 7; IAF, Tab 15 at 5. He has not explained why he could not have pursued his EEO complaint, to stand and fight the alleged discrimination, while remaining at the agency. *See Axsom v. Department of Veterans Affairs*, 110 M.S.P.R. 605, ¶ 17 (2009).

Although the appellant repeats his claims that he suffered whistleblower reprisal for making a complaint to the agency's OIG, he stated in his initial appeal form that he had not filed a whistleblowing complaint with OSC. PFR File, Tab 1 at 4; IAF, Tab 1 at 4-5. He acknowledges on review that the Board's February 2019 email instructed him that it did not have investigative authority over prohibited personnel practices and informed him that OSC was the appropriate agency for such a complaint, but he maintains that the Board should have addressed the prohibited personnel practice. PFR File, Tab 1 at 9; IAF, Tab 5 at 6. To the extent that the appellant contends that he had to resign because it would have been fruitless to pursue a whistleblowing complaint with OSC regarding the alleged reprisal, the fact that other avenues of redress may have involved protracted procedures or may have been unsuccessful does not establish that his choice to resign was involuntary. *See Searcy*, 114 M.S.P.R. 281, ¶ 11. Therefore, we find that the appellant has not presented nonfrivolous allegations of Board jurisdiction over his involuntary resignation claim and he is not entitled to a jurisdictional hearing. *See Ferdon*, 60 M.S.P.R. at 329.

The appellant's remaining arguments are unavailing.

As noted above, the case was reassigned to a third administrative judge during the pendency of the appeal, and the brief order provided the parties no reason for the reassignment. IAF, Tab 19. The appellant filed a response, inquiring as to the reason for the reassignment and again complaining about the EEOC process. IAF, Tab 20 at 4. On review, the appellant argues that there was "no explanation for why [the] case was reassigned to a friend" of the agency

counsel. PFR File, Tab 1 at 4. He asserts that "there is a very 'special' relationship between [agency counsel] and his friend at the MSPB." PFR File, Tab 6 at 5. To the extent that the appellant argues that the administrative judge who issued the initial decision had a conflict of interest or was biased towards the agency, he offers no specific facts or evidence to support his conclusory statements. PFR File, Tab 1 at 4, Tab 6 at 5. The appellant has provided no basis for overcoming the presumption of honesty and integrity that accompanies administrative adjudicators. *See Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980).

Finally, the appellant asserts that he is "entitled to an investigation into serious criminal conduct and illegal retaliation." PFR File, Tab 1 at 4. He demands "an investigation and accountability" into his complaints against his employing agency and violations of the Hatch Act. PFR File, Tab 6 at 4-5. The appellant has maintained throughout his appeal that the EEOC failed to conduct an investigation into his discrimination complaint. IAF, Tab 10 at 4, Tab 16 at 4. To the extent that the appellant requests that the Board conduct an investigation that should have been performed by the EEOC or another government agency, the Board lacks jurisdiction to independently investigate such claims. PFR File, Tab 1 at 4, Tab 6 at 4-5; *see Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985) (stating that the Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation). Regarding the purported violations of the Hatch Act, OSC has long possessed the sole authority to investigate and prosecute allegations of prohibited political activity under the statute. *See Sims v. Government of the District of Columbia*, 7 M.S.P.R. 45, 48 (1981).

**NOTICE OF APPEAL RIGHTS**[3]

This Final Order constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[3] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[4]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[4] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:          _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.