# United States Court of Appeals for the Federal Circuit

---

**KEVIN D. JONES,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2022-1788

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-21-0375-I-1.

---

Decided: April 19, 2024

---

STEPHEN B. PERSHING, Kalijarvi, Chuzi, Newman & Fitch, PC, Washington, DC, argued for petitioner. Also represented by AARON H. SZOT.

ELIZABETH W. FLETCHER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

PARAS NARESH SHAH, Office of General Counsel, National Treasury Employees Union, for amicus curiae National Treasury Employees Union. Also represented by JULIE M. WILSON.

———————————

Before LOURIE, BRYSON, and STARK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Kevin D. Jones appeals from a decision of the Merit Systems Protection Board ("the Board") dismissing his administrative appeal for lack of jurisdiction. *Jones v. Dep't. of Just.*, No. DC-0752-21-0375-I-1, 2022 WL 445118 (M.S.P.B. Feb. 10, 2022), J.A. 1–21 ("*Decision*"). For the following reasons, we affirm.

BACKGROUND

Jones began a term position as an Attorney, GS-0905-14, with the U.S. Department of Agriculture ("USDA") on April 15, 2018. *Decision* at J.A. 2; J.A. 35. On August 4, 2019, he transferred without a break in service to the position of Attorney, GS-0905-14, with the Department of Justice's ("DOJ") Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). *Id.*

At USDA, Jones primarily provided advice and counsel to senior management regarding discrimination complaints filed against the agency. *Decision* at J.A. 8–10. He also litigated ensuing discrimination claims before the Equal Employment Opportunity Commission ("EEOC"), which included performing legal research, engaging in oral advocacy, and drafting pleadings, motions, discovery materials, and more. *Id.*

At ATF, Jones served as an advisor to the Professional Review Board ("PRB") as part of a team of attorneys in the Management Division of the ATF Office of the General Counsel ("OGC"). *Id.* at J.A. 2. The Management Division handled legal issues in the areas of Employment, Contracts, Fiscal, and Ethics. *Id.* Jones's primary duties were in the employment field. *Id.* He also served as the "alternate" contracts attorney, with another attorney in the

Management Division serving as the primary contracts attorney. *Id.*

After Jones had been at ATF for approximately three months, his supervisor learned that the Management Division's primary contracts attorney was leaving the agency and directed that attorney to prepare Jones to take over her contracts matters. *Id.* Prior to that time, Jones had not worked on any contracts matters at ATF. *Id.* at J.A. 7. It soon became evident that Jones did not have the contract law experience that his supervisors had thought that he had. *Id.* at J.A. 2–3. One of Jones's supervisors informed him that they intended to recommend termination of his appointment and gave him the opportunity to resign. *Id.* Jones resigned effective December 21, 2019. *Id.* at J.A. 3.

On March 19, 2020, Jones filed a complaint alleging that ATF had discriminated against him on the basis of his race, sex, age, disability, and reprisal when it forced him to resign. *Id.* He also alleged that he was effectively terminated without due process and that, if he was a probationary employee, ATF failed to follow the procedures set forth in 5 C.F.R. § 315.805. *Id.* at J.A. 4. On March 30, 2021, ATF issued a Final Decision finding no evidence of discrimination and provided Jones with notice of his right to appeal the decision to the Board. *Id.* at J.A. 3. On April 26, 2021, Jones timely appealed to the Board. *Id.*

It was Jones's burden to prove by a preponderance of the evidence that the Board had jurisdiction over his claim. 5 C.F.R. § 1201.56(b)(2)(i)(A); *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1344 (Fed. Cir. 2006). Jones alleged that his resignation was involuntary and was therefore an adverse action within the Board's jurisdiction. *Decision* at J.A. 4. The DOJ disputed that his resignation was

involuntary[1] and asserted that he was not an "employee" under 5 U.S.C. § 7511(a)(1)(B) for jurisdiction as required by 5 U.S.C. § 7513. Section 7511(a)(1)(B) defines an "employee" as a person "who has completed 1 year of current continuous service in the same or similar positions." Jones responded that he was an "employee" under the statute because his two governmental positions had been similar. J.A. 28–31. An Administrative Judge of the Board disagreed with Jones, holding in an Initial Decision that the Board lacked jurisdiction to hear Jones's appeal because he had not shown that he was an "employee" as required by § 7511(a)(1)(B). *Decision* at J.A. 1.

The AJ found that because Jones's position at ATF "was not the same or similar to his prior position with USDA," his four months of work at ATF did not qualify him as an "employee" for purposes of the statute. *Id.* at J.A. 6. The AJ noted that Jones had testified to "several distinctions between the actual tasks he performed for both agencies," despite using the same "broad labels" of his responsibilities at each. *Id.* at J.A. 8. For example, the AJ found that Jones's position at USDA required him to advocate before EEOC administrative judges, whereas, at ATF, he discussed matters with the PRB Chair. *Id.* at J.A. 9. The AJ also noted that although certain new trainings and reference materials were not "required" by ATF to perform Jones's duties, Jones had not disputed that the training and materials "were either useful or necessary for his performance." *Id.* The AJ found that, despite both positions falling "under the broad 'employment law' umbrella," the

---

[1]    The AJ did not make a finding on whether or not Jones's resignation was voluntary or involuntary, and the Board does not argue that theory as an alternative basis to affirm on appeal. *See* Oral Arg. at 26:58–28:37 available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1788_03142024.mp3.

record showed that Jones's "ATF position was different from his USDA position given the distinct nature of the tasks he performed." *Id.*

Finding that Jones was not an "employee," the AJ dismissed Jones's appeal for lack of jurisdiction. *Id.* at J.A. 14. Jones did not appeal the Initial Decision to the full Board, which at the time did not have a quorum, so the AJ's Initial Decision therefore became the Final Decision of the Board on March 17, 2022. Jones appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).[2]

## DISCUSSION

We review the Board's jurisdictional determinations *de novo* and its underlying factual findings for substantial evidence. *Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938). On appeal, "[t]he petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

The Board is a tribunal having limited appellate jurisdiction, only permitted to hear matters as granted by law, rule, or regulation. *Maddox v. Merit Sys. Prot. Bd.*, 759 F.2d 9, 10 (Fed. Cir. 1985); 5 U.S.C. § 7701(a). Pursuant to 5 U.S.C. § 7513(d), the statute enumerating various

---

[2]   The Board initially challenged our appellate jurisdiction, arguing that the appeal was a mixed case and Jones had not explicitly waived his discrimination claims. Resp't's Br. at 15–17. But after Jones filed an updated Fed. Cir. R. 15(c) Statement Concerning Discrimination, *see* ECF 33, the Board agreed that his discrimination claims had been waived. Oral Arg. at 26:26–42. There is therefore no remaining dispute that we have appellate jurisdiction.

adverse actions over which the Board has jurisdiction, an "*employee* against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board" (emphasis added).  Section 7511(a)(1)(B), in turn, defines an "employee" as "a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions."  "Similar positions" are further defined by 5 C.F.R. § 752.402 as "positions in which the duties performed are similar in nature and character and require substantially the same or similar qualifications, so that the incumbent could be interchanged between the positions without significant training or undue interruption to the work."  Positions may be deemed "similar" if they are in the "same line of work," such as involving "related or comparable work that requires the same or similar skills."  *Mathis v. U.S. Postal Serv.*, 865 F.2d 232, 234 (Fed. Cir. 1988).  In determining similarity, it is essential to consider "the nature of the work performed in the two jobs" and "the fundamental character of the work" performed.  *Id.* at 235.

Jones argues that the AJ did not properly apply the law in determining that the Board lacked jurisdiction and that the AJ's underlying factual findings were not supported by substantial evidence.  The Board responds that the AJ's decision was supported by substantial evidence and without legal error.  We address both the legal and factual arguments in turn.

I

Jones alleges that the AJ misapplied the law in determining whether or not he qualified as an "employee" as used in § 7513(d).  Specifically, he alleges that the AJ's analysis (1) is inconsistent with our precedent, *Mathis*, 865 F.2d 232; (2) erroneously relied on our nonprecedential decision in *Amend v. Merit Systems Protection Board*, 221 F. App'x 983 (Fed. Cir. 2007); and (3) erroneously relied upon voluntary training—that the DOJ allegedly admitted that

Jones did not perform and were not required—to conclude that the positions were not similar.

Jones argues that the AJ looked for "exact interchangeability," rather than looking at the "fundamental character" of the positions as mandated by *Mathis*. *See* Oral Arg. at 3:19–55; Pet'r's Br. at 8–17. But Jones's counsel also acknowledged that the AJ "never said that's what she was doing." Oral Arg. at 3:57–4:17. And there is no evidence that the AJ ignored or misapplied *Mathis*. Rather, the AJ correctly quoted that case when discussing the proper considerations for determining whether or not two positions are similar. *Decision* at J.A. 6. That the AJ did not further discuss that specific case or compare it with the facts at hand is not an error. Nor does it mean that the AJ looked for exact interchangeability between the positions. Jones's counsel's suggestion that the AJ "took a case out of the air, tried to match the duties, and, frankly, did so in a disingenuous manner," Oral Arg. at 4:30–38, is both inappropriate and inconsistent with the AJ's decision. The AJ's decision shows that the AJ thoroughly considered the record evidence to determine the fundamental character of the two positions. *See, e.g.*, *Decision* at J.A. 6, 9–10. *Mathis* does not dictate that the two positions at issue here are "similar," and the AJ did not clearly err in finding otherwise.

Jones also argues that the AJ clearly erred in relying on the nonprecedential decision in *Amend* to "justify the same outcome in this case." Pet'r's Br. at 19. But the AJ neither cited *Amend* as controlling nor centered her analysis on that case. All the AJ did was accurately cite the case as exemplary legal support for her finding that there were meaningful distinctions between the positions. *Decision* at J.A. 11. Pointing to a nonprecedential decision in further support of a factual finding supported by record evidence is not reversible legal error. And, indeed, we agree that *Amend* is informative, albeit not binding.

Jones also alleges that the AJ, in finding that the positions were not similar, erred in relying on the fact that Jones had paid for a "week-long subject matter seminar at the start of his employment" and purchased reference material when the DOJ had stipulated that those were "not required" and Jones never ultimately attended the conference. *Decision* at J.A. 9; J.A. 37, 62–63. However, the AJ recognized that those trainings and materials were not required, only additionally finding that Jones did not "dispute that the training and materials were either useful or necessary for his performance." *Decision* at J.A. 9. The AJ therefore did not misinterpret or misapprehend the evidence presented. It was also not the foundation for the AJ's ultimate finding that the two positions were not similar, but merely one of several contributing factors, if a factor at all. Contrary to Jones's position, the AJ did not hold that the training and reference material "render[ed] his DOJ position dissimilar from his USDA position." Pet'r's Br. at 16. We therefore see no error in the AJ having considered that additional training and reference materials may have been helpful as part of her overall analysis of similarity.

## II

The AJ's finding that Jones was not an "employee" as used in § 7513(d) because his two positions were not "similar" is also supported by substantial evidence. It is undisputed that Jones was preference eligible and that his service was continuous, as he transferred from USDA to ATF without a break in service. *Decision* at J.A. 2. The sole dispute is thus whether or not Jones's two positions were "similar." 5 U.S.C. § 7511(a)(1)(B). As the AJ found, and is supported by substantial evidence, the most significant distinguishing factor is that at USDA, Jones had been litigating already-filed employment discrimination cases, and that at ATF, he had been advising others on potential employment disciplinary actions. Jones's contention that the difference between litigating and advising "is irrelevant" is without merit. Pet'r's Reply Br. at 4.

Jones testified that his USDA responsibilities primarily consisted of litigating before the EEOC and assisting in determining settlement options after actions had occurred and a complaint had been filed. *Decision* at J.A. 8; J.A. 73. The USDA position description echoes that understanding, explaining that the individual holding the position represents the agency "in administrative and judicial proceedings," may "negotiate or participate in negotiating settlements," and prepares various filings, such as pleadings, motions, and briefs, "in connection with suits by and against the Government." J.A. 49, 51; *see also* J.A. 73. Jones even acknowledges in his briefs that his job at USDA "was to persuade administrative judges of his position." Pet'r's Reply Br. at 14.

Meanwhile, at ATF, Jones primarily provided advice and counsel on prospective, potential disciplinary actions, *Decision* at J.A. 6–7 (citing testimony of Jones's direct supervisor at ATF), which is further supported by the vacancy announcement for Jones's ATF position, J.A. 44. That announcement explains that, among other things, "the incumbent primarily provides legal advice and recommendations to ATF officials in the area of employment law." J.A. 44. Jones does not appear to have disputed his supervisor's description of his responsibilities or the description in the vacancy announcement. Indeed, his own testimony confirms that he spent the majority of his time advising the PRB Chair and BDO in connection with potential and proposed disciplinary actions. *Decision* at J.A. 8; J.A. 74.

There is no dispute that Jones's two positions were both Attorney – Advisor, GS-0905-14 positions with a general focus on employment law, but those two facts alone are not dispositive of the nature and character of the work Jones performed at each. Looking at the nature and character of the duties for each position does not mean taking a bird's eye view. Any two positions, with enough distance, may mistakenly look similar. And likewise, too granular

an approach may result in an equally incorrect outcome. Here, the record supports the finding that the two positions involved different duties and required different skills, fundamentally affecting the nature and character of the work. As the AJ found, even if the USDA position did involve some advising, Jones was "advising on different types of employment situations appealable in different forums, with different procedural requirements, burdens of proof, and relevant legal principles." *Decision* at J.A. 10.

Neither party has argued that the positions are the "same" under § 7511(a)(1)(B), so it is indisputable that there are differences between them—the question is whether and how those differences affect the fundamental character of Jones's duties. Ultimately, as with most analyses of this type, there are factors that weigh both in favor of and against a finding of the two positions being similar. But the record shows that there is relevant evidence adequate to support the AJ's finding. In reaching its determination that Jones was not an "employee" as used in § 7513(d), the AJ thoroughly considered witness testimony regarding Jones's responsibilities at each position, along with job descriptions for each position and Jones's own testimony. *See, e.g.*, *Decision* at J.A. 6. It would be inappropriate for us to reweigh that factual evidence, particularly the credibility of each witness. *See, e.g.*, *J.C. Equip. Corp. v. England*, 360 F.3d 1311, 1315 (Fed. Cir. 2004) (noting that Board's "determinations of witness credibility are virtually unreviewable" because it "saw the witnesses and heard the testimony" (internal quotation marks, alterations, and citations omitted)).

The Board and Jones both spend significant portions of their briefs disputing whether or not Jones's ATF position involved contract law duties. But we need not resolve this disagreement. The AJ did not appear to rely on his alleged contract law duties at ATF in finding distinctions between the two positions. Rather, she found that "it is undisputed that [Jones] did not actually perform any such duties

during his ATF tenure." *Decision* at J.A. 7; *see also* Oral Arg. at 19:55–20:11 (the Board agreeing that the AJ had not relied on the alleged contract law aspect of the ATF position). If anything, the AJ found in favor of Jones on that point. We find it unnecessary to address the issue further. Even assuming Jones had no contract law duties at ATF, either actual or prospective, substantial evidence supports the AJ's finding that the two positions were not similar.

The AJ therefore did not legally err or lack substantial evidence when reaching her determination that Jones was not an "employee" as used in § 7513(d). We thus affirm the Board's ultimate determination that it lacked jurisdiction to hear Jones's appeal.

## CONCLUSION

We have considered Jones's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

## AFFIRMED

## COSTS

No costs.